Nos. 2017-1252, -1253

# United States Court of Appeals for the Federal Circuit

RICHARD GRAMM,
*Appellant*

v.

DEERE & COMPANY,
*Appellee*.

APPEALS FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, PATENT TRIAL AND APPEAL BOARD IN IPR2015-00898 & IPR2015-00899.

## APPELLEE DEERE & COMPANY'S RESPONSE BRIEF

Gary M. Ropski (*Counsel of Record*)
Jeff M. Nichols
Laura A. Lydigsen
Joshua H. James
Jafon L. Fearson
BRINKS GILSON & LIONE
NBC Tower – Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611
Tel.: 312.321.4200

June 26, 2017

*Attorneys for Appellee*
*Deere & Company*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

GRAMM V. DEERE & COMPANY

Nos. 2017-1252, -1253

## CERTIFICATE OF INTEREST

Counsel for Deere & Company certifies the following:

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Deere & Company. | Deere & Company. | None. |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court (**and who have not or will not enter an appearance in this case**) are:

Kelly Eberspecher (formerly with the firm);

Manish Mehta (formerly with the firm).

June 26, 2017

/s/ *Gary M. Ropski*
Gary M. Ropski

# TABLE OF CONTENTS


STATEMENT OF RELATED CASES .......... viii

JURISDICTIONAL STATEMENT .......... 1

COUNTER-STATEMENT OF ISSUES .......... 2

COUNTER-STATEMENT OF THE CASE .......... 3

I. PRELIMINARY STATEMENT .......... 3

II. STATE OF THE ART .......... 4

III. THE ’395 PATENT .......... 5

A. Claims At Issue .......... 5

B. Prosecution History .......... 8

IV. THE PRIOR ART .......... 9

A. Deere Corn Head .......... 9

B. Chmielewski .......... 11

C. Cleveland .......... 13

V. PERSON OF ORDINARY SKILL IN THE ART .......... 16

VI. PROCEDURAL HISTORY .......... 17

A. Institution Of Deere’s Petitions For *Inter Partes* Review .......... 17

B. Final Written Decisions .......... 17

C. Appeal .......... 19

SUMMARY OF THE ARGUMENT .......... 19

ARGUMENT .......... 22

I. COUNTER-STATEMENT OF STANDARD OF REVIEW .......... 22

II. SUBSTANTIAL EVIDENCE DEMONSTRATES THE OBVIOUSNESS OF COMBINING THE DEERE CORN HEAD, CHMIELEWSKI, AND CLEVELAND .......... 23

A. The Board’s Finding That Combining The Deere Corn Head And Chmielewski Would Have Been Obvious Is Not Disputed .......... 23

B. Substantial Evidence Supports That It Would Have Been

Obvious To Replace Chmielewski's Sensors With Cleveland's Sensor Arm....24

1. Substantial evidence supports the Board's finding that replacing Chmielewski's sensors with Cleveland's sensor arm would have improved flexibility....25

2. Substantial evidence demonstrates that height detection would have been achieved when incorporating Cleveland's sensor arm in Chmielewski's header height control system....27

C. The Board Correctly Rejected Gramm's Argument That Cleveland's Intended Purpose Would Be Compromised By 90-Degree Rotation....31

1. Cleveland's intended purpose is not relevant to the obviousness of replacing the Chmielewski sensors with Cleveland's sensor arm....31

2. Even if Cleveland's purpose were relevant, rotating Cleveland 90 degrees does not defeat Cleveland's purpose....35

3. A POSITA would have rotated Cleveland's sensor arm even if such rotation would negate Cleveland's purpose....37

4. The combination of Chmielewski and Cleveland meets the second element of claim 27....40

III. THE BOARD ALSO CORRECTLY REJECTED GRAMM'S ARGUMENT THAT A POSITA WOULD LACK A REASONABLE EXPECTATION OF SUCCESS....41

A. Substantial Evidence Demonstrates A Reasonable Expectation Of Success In Combining Chmielewski And Cleveland....41

B. Unclaimed Features Are Not Relevant To A POSITA's Reasonable Expectation Of Success....45

1. The Board correctly rejected Gramm's arguments regarding accurate height detection and calibration....46

2. The Board also correctly rejected Gramm's arguments regarding the "size" or "robustness" of the prior art combination ........ 51

a. Size ........ 51

b. Robustness ........ 53

IV. GRAMM'S VAGUE ASSERTIONS ABOUT "CHANGED" ARGUMENTS ARE FACTUALLY AND LEGALLY FLAWED ........ 56

CONCLUSION ........ 60

# TABLE OF AUTHORITIES

## CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) .......... 30

*Allergan, Inc. v. Sandoz Inc.*,
726 F.3d 1286 (Fed. Cir. 2013) .......... 45, 46, 51

*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*,
825 F.3d 1373 (Fed. Cir. 2016) .......... 22, 37

*Amgen Inc. v. F. Hoffman-La Roche, Ltd.*,
580 F.3d 1340 (Fed. Cir. 2009) .......... 44

*Apple Inc. v. Int'l Trade Comm'n*,
725 F.3d 1356 (Fed. Cir. 2013) .......... 50

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016) .......... 44, 45

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) .......... 57, 58, 59, 60

*Cumberland Pharms. Inc. v. Mylan Institutional LLC*,
846 F.3d 1213 (Fed. Cir. 2017) .......... 29

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) .......... 34

*Dome Patent L.P. v. Lee*,
799 F.3d 1372 (Fed. Cir. 2015) .......... 44

*Genzyme Therapeutic Prods. L.P. v. Biomarin Pharm. Inc.*,
825 F.3d 1360 (Fed. Cir. 2016) .......... 59

*In re Chu*,
66 F.3d 292 (Fed. Cir. 1995) .......... 34

*In re Etter*,
756 F.2d 852 (Fed. Cir. 1985) .......... 53

*In re Fritch*,
972 F.2d 1260 (Fed. Cir. 1992) .......... 33, 38

*In re Fulton*,
391 F.3d 1195 (Fed. Cir. 2004) ....................55

*In re Gordon*,
733 F.2d 900 (Fed. Cir. 1984) .................... 33, 38

*In re GPAC Inc*.,
57 F.3d 1573 (Fed. Cir. 1995) ....................49

*In re Gurley*,
27 F.3d 551 (Fed. Cir. 1994) ....................55

*In re Icon Health & Fitness, Inc*.,
496 F.3d 1374 (Fed. Cir. 2007) .................... 40, 52, 53

*In re Jolley*,
308 F.3d 1317 (Fed. Cir. 2002) .................... 22, 24, 38

*In re Magnum Oil Tools Int'l, Ltd*.,
829 F.3d 1364 (Fed. Cir. 2016) .................... 30, 44, 45

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012) .................... 34, 53

*In re NTP, Inc*.,
654 F.3d 1279 (Fed. Cir. 2011) ....................37

*In re Ratti*,
270 F.2d 810 (CCPA 1959).................... 33, 38

*In re Umbarger*,
407 F.2d 425 (CCPA 1969)....................34

*In re Urbanski*,
809 F.3d 1237 (Fed. Cir. 2016) ....................34

*In re Warsaw Orthopedic, Inc*.,
832 F.3d 1327 (Fed. Cir. 2016) .................... passim

*Innogenetics, N.V. v. Abbott Labs*.,
512 F.3d 1363 (Fed. Cir. 2008) ....................29

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) .................... 44, 59

*K/S HIMPP v. Hear-Wear Techs., LLC*,
751 F.3d 1362 (Fed. Cir. 2014)....................37

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
688 F.3d 1342 (Fed. Cir. 2012)....................29

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................43

*McGinley v. Franklin Sports, Inc.*,
262 F.3d 1339 (Fed. Cir. 2001)....................56

*Merck & Cie v. Gnosis S.P.A.*,
808 F.3d 829 (Fed. Cir. 2015)....................44

*Noelle v. Lederman*,
355 F.3d 1343 (Fed. Cir. 2004)....................44

*Paice LLC v. Ford Motor Co.*,
No. 2016-1647, 2017 U.S. App. LEXIS 3980 (Fed. Cir. Mar. 7, 2017)....................31

*Redline Detection, LLC v. Star Envirotech, Inc.*,
811 F.3d 435 (Fed. Cir. 2015).................... 30, 50, 54

*Ruiz v. A.B. Chance Co.*,
357 F.3d 1270 (Fed. Cir. 2004)....................56

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006).................... 24, 57

*Tokai Corp. v. Easton Enters.*,
632 F.3d 1358 (Fed. Cir. 2011)....................44

*VirnetX Inc. v. Apple Inc.*,
665 Fed. Appx. 880 (Fed. Cir. 2016)....................49

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
853 F.3d 1272 (Fed. Cir. 2017)....................59

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012)....................29

**STATUTES**

35 U.S.C. § 103(a) (1999)....................8

## STATEMENT OF RELATED CASES

These two appeals (2017-1252, -1253) involve the unpatentability of claims 1-11 and 27-34 of U.S. Patent No. 6,202,395 ("'395 patent"). A district court case relating to the '395 patent, which is presently stayed, will be impacted by the result of these appeals: *Richard Gramm and Headsight, Inc. v. Deere & Company*, Case No. 3:14-cv-575-RLM (N.D. Ind.). Additionally, claims 12-26 of the '395 patent—claims not subject to these appeals—are currently the subject of an instituted *ex parte* reexamination filed by Appellee Deere & Company ("Deere"): Control No. 90/013,868.[1] *See* Decision Granting Request for *Ex Parte* Reexamination of U.S. Pat. No. 6,202,395 B1 (Jan. 26, 2017). On May 11, 2017, a non-final office action was mailed, rejecting claims 12-26.

[1] Gramm incorrectly lists claims 12-16 as subject to the instituted *ex parte* reexamination. BlBr.x.

## JURISDICTIONAL STATEMENT

Deere agrees with Appellant Richard Gramm's ("Gramm's") Jurisdictional Statement. *See* BlBr.1.

## COUNTER-STATEMENT OF ISSUES

I. Whether substantial evidence supports the Board's finding that a POSITA would have been motivated to replace the sensors in Chmielewski's header height control system with Cleveland's sensor arm, in order to improve flexibility and permit a combine header to traverse objects without damage.

II. Whether substantial evidence supports the Board's finding that a POSITA would have predictably achieved success by starting with Chmielewski's header height control system and replacing Chmielewski's sensors with Cleveland's sensor arm such that a POSITA would have had a reasonable expectation of success in making the claimed invention.

## COUNTER-STATEMENT OF THE CASE

### I. PRELIMINARY STATEMENT

The Patent Trial and Appeal Board ("Board") correctly recognized that the '395 patent's use of the claimed height sensor in a combine header was nothing more than an obvious combination of the known features of the Deere Corn Head, Chmielewski, and Cleveland.[2] Appx68-69; Appx140. In each 70-page Final Written Decision, the Board held that it would have been obvious to combine the Deere Corn Head with Chmielewski's header height control system to control the height of the Deere Corn Head. Appx31-32; Appx56; Appx102-103; Appx127-128. The Board further found that replacing Chmielewski's sensors with Cleveland's flexible arm would have been an obvious, "simple substitution of one known element for another" that "achieve[d] [a] predictable result of improved flexibility . . . ." Appx48; Appx119.

On appeal, Gramm does not dispute that: (1) all limitations of claims 1 and 27, except for claim 27's requirement that the shaft "rotationally displaces [the] rotation sensor," are found in the prior art, and (2) it would have been obvious to incorporate Chmielewski's header height sensing system onto the Deere Corn Head. BlBr.1-2,39. Gramm attacks just one aspect of the Board's prior art

[2] "Deere Corn Head" refers to the teachings of Lofquist, DPC, and DA. *See* Section IV.A, *infra*, 9.

combination: replacing Chmielewski's sensors with Cleveland's sensor arm. BlBr.1-2,21-22. As for the challenges to the Board's findings that Gramm does raise here, none of them have merit. Substantial evidence supports the Board's decisions, as discussed below. This Court should affirm.

## II. STATE OF THE ART

In the mid-1990s, a trend toward faster, more automated combines with larger headers made combine heads more susceptible to hitting the ground. Appx3081-3084, 162:20-165:4; Appx1085, 1:22-39; Appx633. The solution to this problem was apparent in the prior art: automated height control systems. Appx1085, 1:40-60; Appx633-634. By the December 31, 1997 priority date of U.S. Patent No. 6,202,395 ("'395 patent"), cut crop headers (e.g., for soybean crops) had used height control systems for many years. Appx2954-2955, 35:25-36:5, *cited by* Appx809; Appx2960, 41:18-20; Appx2830-2831, ¶ 32. In addition, by that time, height control systems were also available for non-cut crop headers (e.g., for corn crops). Appx2963-2965, 44:22-46:20, *cited by* Appx809; Appx3093, 174:6-13; Appx2830-2831, ¶ 32.

The '395 patent itself acknowledges the existence of prior art height control systems, which included "a curved bar attached to an intermediate, lower portion of the head which engages the soil as the combine traverses a field." Appx1085, 1:42-44. The specification explains that in the prior art systems, "[t]he curved bar

functions as a sensor, detecting the height of the head above the soil, and provides a feedback signal to a height controller in the combine for adjusting header height." Appx1085, 1:47-50. One such prior art height control system was the May-Wes system shown below:




Appx1959 (annotations added); Appx2975, 56:5-20; Appx3011-3012, 92:21-93:20. The prior art included numerous additional height detection systems for use with non-cut crop headers, including U.S. Patent No. 4,437,295 ("Rock") and systems developed by Rek-Tin and Hart Carter. Appx1189; Appx2963-2965, 44:22-46:20; Appx3093, 174:6-13.

## III. THE '395 PATENT

### A. Claims At Issue

The '395 patent at issue in this appeal concerns a height control system for use with a non-cut crop header that includes an arm (or shaft) that is used to measure the relative distance between the header and the ground. Appx1087-1088,

6:60-7:17, 7:29-31; Appx4-5. Independent claims 1 and 27 (reproduced below) are the focus of this appeal.[3] BlBr.2 n.1.

> 1. Apparatus for maintaining a non-cut crop header disposed on a forward portion of a combine a designated height above the soil as the combine traverses a field, said apparatus comprising:
>
> a pre-loaded, generally linear flexible arm coupled to a forward portion of the header and having first and second opposed ends, wherein the first end of said flexible arm engages and is displaced over the soil as the header moves above the soil;
>
> angular deflection sensing means coupled to the second end of said flexible arm for measuring a deflection of said flexible arm when the first end of said flexible arm encounters irregularities in the soil as the header moves above the soil and for providing a first signal representing the extent of deflection of said flexible and [sic, arm]; and
>
> control means coupled to said header and said angular deflection sensing means and responsive to said first signal for raising or lowering the header in accordance with said first signal in maintaining the header a designated height above the soil, wherein said flexible arm and angular deflection sensing means are attached to a head housing disposed on a forward portion of said combine and said head housing is comprised of polyurethane and includes a metal tip *and am [sic, a] mounting bracket for attaching said metal tip to a forward end of said head housing, and wherein said mounting bracket further couples said flexible arm to a forward end of said head housing.*
>
> 27. For use on a plastic non-cut crop header housing disposed on a forward portion of a combine used in the harvesting of crops, said

[3] Gramm made no argument in the IPRs that the dependent claims include any features that distinguish over the prior art and, thus, the "dependent claims stand or fall with their attendant independent claim." *See In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1330 n.3 (Fed. Cir. 2016); Appx804.

> header housing have a tip mounted to a forward end thereof by means of a *mounting bracket*, an arrangement for determining the height of the header housing above the soil as the combine traverses a field, said arrangement comprising:
>
> a rotation sensor disposed in a lower, forward portion of the header;
>
> an elongated, linear shaft having first and second opposed ends, wherein said first end is coupled to said rotation sensor and said second end engages the soil, and wherein said shaft ***rotationally displaces said rotation sensor*** as the second end of said shaft engages and passes over irregularities in the soil; and
>
> *a flange connecting said rotation sensor to the mounting bracket for mounting said rotation sensor on a lower portion of the forward end of the plastic header housing, wherein said mounting bracket includes a strap and a bracket respectively disposed on lower and upper surfaces of the header housing and connected together by at least one nut and bolt combination*.

Appx1088, 7:29-56 (emphases added); Appx1089, 10:1-22 (emphases added).

As shown in underlining above, claim 1 requires that the height sensor include a "flexible arm" while claim 27 requires only a "shaft"—without any mention of flexibility. As shown in non-bold *italics*, both independent claims require a particular mounting bracket. Notably, neither claim 1 nor claim 27 requires that the arm (or shaft) used by the height sensor have any particular degree of accuracy in detecting height, any particular size, or any particular robustness.

Gramm does not dispute on appeal that the prior art teaches all of the limitations of claims 1 and 27, except the one highlighted in ***bold italics*** above. *See* BlBr.27-48. That limitation is claim 27's requirement that the shaft

"rotationally displaces [the] rotation sensor." *See* BlBr.39. The Board held that limitation was met in view of the combination of Chmielewski and Cleveland. Appx58-59.

**B. Prosecution History**

During prosecution, the Examiner repeatedly rejected Gramm's claims. Appx1187-1196 (Appx1189); Appx1218-1225 (Appx1220). In those rejections, the Examiner found, *inter alia*, that application claims 1 and 33 (issued claims 1 and 27, respectively) would have been obvious under 35 U.S.C. § 103(a) (1999) based on combinations of U.S. Patent No. 3,611,286 ("Cleveland") or U.S. Patent No. 5,535,577 ("Chmielewski") in combination with other references. Appx1189-1190; Appx1193; Appx1220-1222. In rejecting the claims based on Cleveland, the Examiner noted:

> Cleveland discloses that it is known in the art to provide a position sensing device with a pre-loaded flexible arm, the preload condition being inherent from the spring. The flexible arm is a combination of a spring (ref. # 38) attached to a rigid shaft (ref. # 24).

Appx1190.

Gramm ultimately overcame the Examiner's rejections by amending application claims 1 and 33 to add a mounting bracket. Appx1237-1241; Appx1249-1253; Appx1254-1256. Only then did the Examiner allow the claims to issue. Appx1249-1253; Appx1254-1256; Appx1088-1089, 7:29-56, 10:1-22.

However, Gramm did not provide the Examiner with prior art references showing the Deere Corn Head, which includes the mounting bracket of claims 1 and 27. Appx1079. *See* Section IV.A, *infra*, 9.

## IV. THE PRIOR ART

### A. Deere Corn Head

Gramm does not dispute that Deere's 90 Series corn header ("Deere Corn Head") was prior art in December 1997 or that the Deere Corn Head was a plastic non-cut crop header that featured a mounting bracket as required by claims 1 and 27.[4] Nor does Gramm dispute that the Deere Corn Head with the mounting bracket was disclosed in the Deere Parts Catalog ("DPC") and the Deere Advertisement ("DA") (relied on by Deere in IPR2015-00898), and U.S. Patent No. 5,761,893 ("Lofquist") (relied on by Deere in IPR2015-00899). *See supra* footnote 4, at 9. The annotated figures below show the Deere Corn Head relied on in each of the two underlying IPRs. In each figure, the components of the mounting bracket are highlighted in yellow.

---

[4] *See* Appx1748-1837, Appx1758-1759; Appx1708-1747, Appx1740; Appx1308, ¶¶ 34-35; Appx1311, ¶ 44; Appx1316-1317, ¶¶ 55-57; Appx1336, ¶ 118; Appx1338, ¶ 124; Appx187-188; Appx192-193; Appx209-212; Appx1843, 2:7-10, 2:24-25, 2:30-35; Appx1520, ¶ 34; Appx1523, ¶ 43; Appx1528-1529, ¶¶ 55-56; Appx1547, ¶ 116; Appx1549, ¶ 122; Appx252-254; Appx258; Appx275-277.

**DPC/DA (IPR2015-898)**




**Lofquist (IPR2015-899)**




*Fig.8*

Appx1758 (annotations added); Appx1841, Fig. 8 (annotations added).

As shown above, the Deere Corn Head generally features a metal tip that is secured by a mounting bracket (highlighted in yellow above). Appx1311, ¶ 44; Appx1758-1759; Appx1523, ¶ 43; Appx1840, Fig. 2; Appx1841, Fig. 8; Appx1843, 2:24-25, 2:30-35. The mounting bracket is composed of two pieces of metal with a flat portion (labeled in the DPC/DA figure above as reinforcement (7) and strip (9), and in the Lofquist figure above as bracket (28) and plate (30)), which are fastened to either side of the plastic housing as well as to the metal tip via at least one nut and bolt. Appx1758; Appx1841. As shown in the figures, the

mounting bracket is located at a forward-portion of the header housing. *See* Appx1758; Appx1841.

For simplicity, the teachings of Lofquist, DPC, and DA will be collectively referred to as the "Deere Corn Head." None of these three references was before the Examiner during prosecution of the '395 patent, but the header and mounting bracket shown in them were briefly mentioned in the specification of the '395 patent. *See* Appx1079; Appx1086, 4:6-30.

**B. Chmielewski**

Gramm agrees that Chmielewski discloses an automated header height control system on a combine with a cut crop header. Appx1875, 1:25-27; Appx14; BlBr.17. Gramm states that cut and non-cut crop headers "are structurally and functionally different," BlBr.17n.2, but Gramm does not dispute that the benefit of a header height control system would be the same for both a cut-crop header and a non-cut crop header. Appx1340-1342, ¶¶ 132-135; Appx1551-1553, ¶¶ 130-133; Appx31-32; Appx102-103. Figure 1A of Chmielewski is reproduced below:



FIG. 1A

Appx1846, Fig. 1A.

Gramm also agrees that Chmielewski explains: "Sensors 236 and 237 include hoops connected to respective potentiometers 235*a* and 235*b* (shown in FIG. 10)." Appx1892, 35:37-38; BlBr.18. Additionally, Gramm agrees that Chmielewski discloses a calibration process. *See, e.g.*, Appx1894-1895, 39:35-41:5; BlBr.18. For example, Chmielewski discloses that "[r]outine calibration is extremely important due to . . . variations in the combine, header and sensors that occur during and after each use in the field." Appx1879, 9:37-41; Appx42. "Additionally, normal use can bend the sensing arm of sensors 236 and 237 . . . Thus the sensors should be re-calibrated at the beginning of each shift or day in order to ensure that the sensory signals are correct." Appx1894, 39:44-48.

### C. Cleveland

Cleveland is directed to "a device for sensing the relative position of a moving vehicle with respect to a furrow in the ground," which is illustrated below. Appx1905, 1:4-6.




Appx1903, Fig. 1 (annotations added).

Gramm agrees that Cleveland teaches "that swing member 20 is a rigid member." Appx1905, 2:44-49; BlBr.14. Specifically, Cleveland discloses a sensor arm including a spring and "swing member" that together maintain a "straight configuration." Appx1905, 2:59-65; Appx1904, Fig. 2 (reproduced below); Appx1343-1344, ¶ 138; Appx1554-1555, ¶ 136. Figure 2 of Cleveland shows the components of the sensor arm (highlighted in yellow below) in greater detail:




Appx1904, Fig. 2 (annotations added). The "[s]pring 38 is flexible along its longitudinal axis but is adapted to maintain its straight configuration in absence of bending forces being applied thereto." Appx1905, 2:60-63; Appx1903-1904, Figs. 1, 2, 6. The sensor arm is also "pre-loaded" such that it "must be completely flexible so that it will bend in any direction, and yet it must still exert enough force on bearing member 44 to cause it to be urged toward the deepest portion of the furrow." Appx1907, 5:9-12; Appx1313, ¶ 49; Appx1525-1526, ¶ 48. As shown in Figure 2, the arm in Cleveland is connected to linkages (switch link 62, slot 28,

and slot pin 64), which are mounted on the plate 18. Appx1906, 3:7-17. The plate 18, in turn, is mounted to the agricultural vehicle. Appx1905, 2:44-46.

Cleveland teaches that "[i]f vehicle 10 moves to the left from its position shown in FIG. 1, a result is obtained such as shown in FIG. 6. As the vehicle begins to move to the left, bearing member 44 begins to ride up on the slanted surface of furrow 78." Appx1906, 4:5-8; Appx1903-1904, Figs. 1, 6. Gramm agrees that Cleveland detects when its sensor arm (highlighted in yellow below) is out of vertical alignment with the furrow, as shown in FIG. 6 below. *See* BlBr.16; *see also* Appx2857.




Appx1904, Fig. 6 (annotations added).

## V. PERSON OF ORDINARY SKILL IN THE ART

Both parties proposed similar levels of ordinary skill, and neither argued that the differences between their proposed levels of ordinary skill would affect the outcome. *See* Appx1297-1298, ¶ 17, *cited by* Appx177; Appx2825, ¶ 16, *cited by* Appx652; Appx11 & n.5. Based on the parties' submissions, the Board found:

> [T]he level of ordinary skill in the art is "a mechanical engineer having familiarity with agricultural equipment, such as combines, and hydraulic systems and sensors" or "a person having 10 or more years of experience working with combines."

Appx11-12. The Board reasoned that the referenced "familiarity" could be gained through "approximately three years of experience in combine or agricultural equipment design, including components thereof, such as headers and header height control systems" or "other experience." Appx11 n.6. On appeal, Gramm does not dispute the Board's definition of the level of ordinary skill.

Deere's two IPR petitions included detailed expert testimony from James Lucas, who has over 40 years of hands-on design and development experience with agricultural machines, such as combines and harvesters, nearly 20 years of which involved combines and their components, such as combine headers and their height control systems. Appx1286; Appx1294-1296, ¶¶ 7-13; Appx1499. Gramm does not dispute that Mr. Lucas was qualified to provide his expert opinions on the subject matter of the '395 patent under either party's definition of a POSITA.

## VI. PROCEDURAL HISTORY

### A. Institution Of Deere's Petitions For *Inter Partes* Review

On March 20, 2015, Deere filed two petitions for *inter partes* review of all claims of the '395 patent as obvious based on the Deere Corn Head, Chmielewski, and Cleveland. Appx168; Appx173; Appx177; Appx234; Appx238; Appx242. On September 23, 2015, the Board issued a pair of institution decisions holding that each of Deere's Petitions established a reasonable likelihood that claims 1-11 and 27-34 of the '395 patent were unpatentable based on the Deere Corn Head, Chmielewski, and Cleveland. Appx426-460; Appx461-496. Both IPRs proceeded separately with distinct briefing but with a single oral hearing. Appx926 n.1.

### B. Final Written Decisions

On September 22, 2016, the Board issued final written decisions ("FWDs") in each IPR holding claims 1-11 and 27-34 of the '395 patent unpatentable as obvious. Appx68-69; Appx140. In each 70-page FWD, the Board held

> that one of ordinary skill in the art would have been prompted to replace each of Chmielewski's contact sensors with Cleveland's sensor arm (1) as it was known to be a simple substitution of one known element for another, and (2) to achieve the predictable result of improved flexibility provided by Cleveland's sensor arm, the benefits of which permit traversing foreign objects without breaking or being damaged.

Appx48; Appx119.

The Board rejected Gramm's inoperability argument with respect to Cleveland because: (1) Deere did "not propose modifying Cleveland in and of itself"; (2) "after modification Cleveland's probe assembly would still be used to detect relative motion in the plane in which it operates"; and (3) even if Cleveland's purpose were negated by rotating the arm 90 degrees, the POSITA would have understood that rotating Cleveland's arm was appropriate when combining Cleveland with Chmielewski. Appx41 n.20; Appx46-47; Appx112 n.19; Appx117-118.

The Board also rejected Gramm's argument with respect to Cleveland's arm being designed to bend, because (1) claim 1 simply requires a "flexible" arm, and Cleveland's arm satisfies this requirement (and while claim 27 does not recite a "flexible" arm, it also does not exclude one), and (2) "Chmielewski teaches calibrating the height control system." Appx42 & n.21; Appx1905, 2:59-61; Appx1879, 9:34-47.

Lastly, the Board rejected Gramm's arguments with respect to the size and robustness of Cleveland's arm because (1) Gramm had "not identified any limitation in claim 1 [or 27][5] that requires an explicit size or robustness" and (2)

[5] The Board's analysis regarding size or robustness applies to both claims 1 and 27. Appx30; Appx38.

"modifying the size of Cleveland's plate and linkages to fit [the Deere Corn Head] was within the ordinary level of skill . . . ." Appx45.

### C. Appeal

Gramm appealed the judgment of unpatentability as to claims 1-11 and 27-34 of the '395 patent in both IPRs. Dkt. 1-2, 1-2. There are no substantive differences between the arguments in the two consolidated appeals. Appx74 n.2. Also, unless otherwise noted, all arguments apply equally to claims 1 and 27.

## SUMMARY OF THE ARGUMENT

Very little remains in dispute in this appeal. The Board found that it would have been obvious to a POSITA prior to December 1997 to combine the Deere Corn Head, Chmielewski's header height control system, and Cleveland's sensor arm to arrive at the subject matter of claims 1-11 and 27-34 of the '395 patent. On appeal, no disputes remain about claim construction, the definition of the level of ordinary skill, or secondary considerations. Further, Gramm does not dispute that it would have been obvious prior to December 1997 to combine Chmielewski's header height control system with the Deere Corn Head. Instead, Gramm's appeal centers on just two fact disputes related to the combination of Chmielewski and Cleveland. Gramm generates these two fact disputes by ignoring how the Board combined the prior art and arguing the references should be combined differently.

For each disputed issue, the Board already carefully considered and rejected Gramm's positions based on substantial evidence.

First, the Board correctly held that a POSITA would have been motivated to incorporate Cleveland's sensor arm into Chmielewski's header height control system based on the teachings of Cleveland itself as well as Mr. Lucas's and Mr. Gramm's testimony. In light of this evidence, the Board also correctly rejected the argument Gramm again raises on appeal that a POSITA would have avoided this obvious combination based on Gramm's reading of the "intended purpose" of Cleveland. Substantial evidence supported each of the Board's three independent reasons for rejecting this argument: (1) Cleveland's purported intended purpose is irrelevant because a POSITA would begin with the Deere Corn Head and Chmielewski's header height control system and then substitute Cleveland's sensor arm, (2) rotating Cleveland's sensor arm 90 degrees would not negate its purpose, and (3) even if Cleveland's purpose were negated, a POSITA would still rotate Cleveland's sensor arm 90 degrees. *See* Section II.C, *infra*, 31.

Second, the Board correctly recognized that a POSITA would have predicted that Chmielewski's header height control system would continue to detect height when modified with Cleveland's sensor arm. This was well supported by Chmielewski's and Cleveland's respective disclosures, Mr. Lucas's expert testimony, and the admissions of Mr. Gramm and his expert, Mr. Matousek.

Gramm's complaints that this evidence somehow does not suffice for a reasonable expectation of success hinge on unclaimed properties such as "accurately sens[ing] height" (including "calibration") and "successfully operat[ing] in the harsh corn harvesting environment" (particularly "size" and "robustness") that are irrelevant to the reasonable expectation of success inquiry. *See* BlBr.22. Notwithstanding the irrelevancy of these properties, Deere presented and the Board was persuaded by substantial evidence negating each of Gramm's arguments.

Finally, Gramm's assertion that the Board erred by not making a finding on reasonable expectation of success is incorrect. The Board found that a POSITA's expectation of success was not just reasonable—success was "predictable" given the simple mechanical combination of the prior art involved. Moreover, the Board repeatedly expressly acknowledged—and then rejected—Gramm's arguments concerning the reasonable expectation of success.

Gramm's appeal does little more than ask this Court to reevaluate the considerable evidence on two issues of fact that the Board already evaluated in each of its 70-page opinions. The standard of review here, however, only requires substantial evidence to support the Board's conclusions.

## ARGUMENT

### I. COUNTER-STATEMENT OF STANDARD OF REVIEW

This Court reviews the Board's legal conclusion of obviousness *de novo*, and its factual findings for substantial evidence. *Warsaw*, 832 F.3d at 1329. "An examination of the scope and content of the prior art produces factual findings reviewed for substantial evidence," *id.* at 1332, and "[w]hen the PTAB examines the scope and content of prior art . . . it must consider the prior art 'in its entirety, i.e., as a *whole*.'" *Id* (emphasis in original). This Court "may not reweigh facts already considered by the PTAB," but rather must "determine[] whether substantial evidence supports the [PTAB's] fact findings." *Id*. at 1333-34.

"Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence." *Id*. at 1329. "A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding." *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1380 (Fed. Cir. 2016). If "the evidence in [the] record will support several reasonable but contradictory conclusions," this Court "will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative." *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002).

## II. SUBSTANTIAL EVIDENCE DEMONSTRATES THE OBVIOUSNESS OF COMBINING THE DEERE CORN HEAD, CHMIELEWSKI, AND CLEVELAND

### A. The Board's Finding That Combining The Deere Corn Head And Chmielewski Would Have Been Obvious Is Not Disputed

Gramm does not dispute that the Board correctly found with respect to claims 1 and 27 that "it would have been obvious to one of ordinary skill in the art to combine Chmielewski's header height control system with the non-cut crop header of [the Deere Corn Head] . . . ." Appx32; Appx61; Appx103; Appx127-128; Appx132. Likewise, Gramm does not dispute the Board's: (1) claim constructions; (2) definition of the level of ordinary skill in the art; (3) findings that every limitation of claims 1 and 27 was found in the prior art, with the exception of claim 27's requirement that the shaft "rotationally displaces [the] rotation sensor"; and (4) findings that no secondary indicia of nonobviousness were raised.[6] Gramm has good reason for his silence on appeal on these points—substantial evidence supports each of the Board's findings.[7] Gramm cannot raise any challenge to these

---

[6] Appx7-12 & n.4; Appx36 n.15; Appx54-60; Appx82; Appx125-131.

[7] *See also* Appx1085, 1:11-13, 1:40-41; Appx1086, 4:23-30; Appx1088, 7:33-34, 7:44-45, 7:48-51, 7:54-56; Appx1242-1243; Appx1311-1312, ¶¶ 44-45; Appx1336, ¶ 118; Appx1340-1341, ¶ 132; Appx1342-1343, ¶¶ 134-137; Appx1500; Appx1523-1524, ¶¶ 43-44; Appx1547, ¶ 116; Appx1551-1554, ¶¶ 130, 132-135; Appx1758-1759; Appx1839, Fig. 1; Appx1841, Fig. 8; Appx1843, 1:21-22, 2:7-10, 2:30-35; Appx1845-1847, Abstract, Figs. 1A, 1B;

findings for the first time on reply. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("[A]rguments not raised in the opening brief are waived.").

### B. Substantial Evidence Supports That It Would Have Been Obvious To Replace Chmielewski's Sensors With Cleveland's Sensor Arm

Gramm's appeal focuses on attacking the Board's finding that a POSITA "would have been prompted to modify the [Deere Corn Head]/Chmielewski combination to incorporate the teachings of Cleveland . . . ." Appx48; Appx58-59; Appx61; Appx119; Appx129-130; Appx132. The Board's findings, however, are supported by 70 pages of careful analysis, backed by:

- the prior art itself (Appx1905, 2:46-58, 2:62-63, 2:67-74; Appx1906, 4:39-54; Appx1879, 9:34-47; Appx1086, 4:23-30);
- Mr. Lucas's expert testimony (Appx1343-1345, ¶¶ 134-36, 138-40; Appx1337, ¶¶ 120-22; Appx1554-1556, ¶¶ 132-34, 136-38; Appx1548, ¶¶ 118-20); and
- admissions by Mr. Gramm and his expert (Appx2819; Appx2858-2859, ¶ 81; Appx2861-2862, ¶ 84; Appx672).

This substantial evidence supports affirmance. *See Jolley*, 308 F.3d at 1320.

---

Appx1858, Fig. 10; Appx1875, 1:24-26; Appx1876, 4:60-61; Appx1880, 12:22-33; Appx3131-3132, 212:12-213:3.

### 1. Substantial evidence supports the Board's finding that replacing Chmielewski's sensors with Cleveland's sensor arm would have improved flexibility

Substantial evidence demonstrates that the Board correctly found a POSITA would have been prompted to replace each of Chmielewski's sensors with Cleveland's sensor arm "to achieve the predictable result of improved flexibility . . . ." *See* Appx48; Appx119. This evidence includes Mr. Lucas's expert testimony:

- "Like Chmielewski, Cleveland is directed to a sensor system to detect the location of an agricultural machine relative to a position on the ground and therefore is analogous art."
- "Replacing the contact sensors 236, 237 of Chmielewski with the swing member 20, collar like hub 22, stub 24, helical spring 38, and bearing member 44 (collectively 'sensor arm') of Cleveland would have amounted to nothing more than a simple substitution of one known element for another."
- "A POSITA would have understood" that such replacement "would have predictably resulted in a sensor arm that had improved flexibility, due to the helical spring, yet would have still been sufficiently rigid so as to allow for the accurate measurement of the header height."

- "A POSITA would have appreciated the benefits of improved flexibility of Cleveland's sensor arm for traversing over foreign objects without breaking or being damaged."

Appx1343-1344, ¶ 138; Appx1554-1555, ¶ 136; *see also* Appx216-217; Appx282. Mr. Lucas confirmed that it would have been obvious to make a simple substitution of a sensor in one sensor system (Chmielewski) with a sensor in an analogous sensor system (Cleveland) to achieve improved flexibility. Appx1343-1344, ¶ 138; Appx1554-1555, ¶ 136.

Cleveland itself lends further support to Mr. Lucas's testimony. Cleveland provides that one of the "objects of the present invention" includes providing a "sensing probe having complete flexibility so that it can deflect out of shape and . . . snap sharply back into a proper working attitude when the stresses are relieved." Appx1905, 1:61-2:4; *see also* Appx1907, 5:14-16. Thus, Cleveland's sensor arm has the same function (flexibility) and purpose (to help detect where agricultural equipment is relative to the ground) in the Cleveland reference as it would have when incorporated into the Chmielewski header height control system. *See* Appx1343-1344, ¶ 138; Appx1905, 1:4-6.

Mr. Gramm's admissions further buttress the obviousness of replacing Chmielewski's sensors with Cleveland's sensor arm to avoid damage. Mr. Gramm admitted that prior to December 1997, there was reason to make the sensor

flexible: (1) "to have a sensor that can take that abuse and that shock and not transmit it up into the more delicate parts," especially with "a plastic corn head"; (2) to help deal with "an obstacle in the field"; and (3) to help when a farmer "drives [the combine] backwards." Appx3106-3111, 187:20-192:3; Appx3233, 304:11-25; Appx811. Mr. Gramm also acknowledged that it was known that if the combine backed up and a rigid sensor was "a certain height it could buckle in the ground and buckle backwards." Appx3106-3111, 187:20-192:3. The use of a flexible arm like that in Cleveland was an obvious solution to address these known issues with the rigid arms in the prior art. *See* Appx3111, 192:4-11; Appx3223, 304:11-25.

### 2. Substantial evidence demonstrates that height detection would have been achieved when incorporating Cleveland's sensor arm in Chmielewski's header height control system

Substantial evidence, including expert testimony from Mr. Lucas, also supports the Board's finding that incorporating Cleveland's sensor arm in Chmielewski's header height control system would have achieved height detection. Appx1343-1345, ¶¶ 138-140; Appx1554-1556, ¶¶ 136-138; Appx1906, 4:39-54; Appx46-48; Appx117-119. Cleveland itself discloses that its sensor arm was flexible but also sufficiently stiff: "Spring 38 is ***flexible*** along its longitudinal axis ***but is adapted to maintain its straight configuration*** in absence of bending forces being applied thereto." Appx1905, 2:59-65 (emphases added); *see also*

Appx1903-1905, 2:44-49, Figs. 1, 2, 6; Appx1313, ¶ 49; Appx1525-1526, ¶ 48; Appx189; Appx255. Mr. Lucas explained that the Cleveland spring incorporated into Chmielewski "would have still been sufficiently rigid so as to allow for the accurate measurement of the header height." Appx1343-1344, ¶ 138; Appx1554-1555, ¶ 136; Appx217; Appx282.

The Board's finding that a POSITA would have been motivated to combine Chmielewski and Cleveland to make a functioning height sensor (Appx47-48; Appx118-119) is further backed by Mr. Lucas's testimony that:

- Chmielewski and Cleveland are analogous art, and replacing Chmielewski's sensors with Cleveland's sensor arm "would have amounted to nothing more than a simple substitution of one known element for another." Appx1343-1344, ¶ 138; Appx1554-1555, ¶ 136; Appx216-217; Appx282.
- "This connection is mechanical in nature and would have been accomplished according to known methods to yield the predictable result of sensing the angular deflection of an arm." Appx1344-1345, ¶ 139; Appx1555-1556, ¶ 137; Appx217-218; Appx283.
- "It would have been within the technical grasp of a POSITA to modify the potentiometers of Chmielewski to fit with the sensor arm

of Cleveland," because Chmielewski and Cleveland are analogous art. Appx1345, ¶ 140; Appx1556, ¶ 138; Appx218; Appx283.

Thus, substantial evidence supports the Board's finding that a POSITA would have been motivated to combine Chmielewski and Cleveland to achieve an improved height sensor.[8]

Gramm's attack on Mr. Lucas's expert testimony as "conclusory" is belied by the testimony itself, which thoroughly explains a POSITA's motivations and reasonable expectation of success in making the simple mechanical combination of Chmielewski and Cleveland over the course his two 65+ page declarations. *See* BlBr.40-41, 52-53.[9] Mr. Lucas's detailed reasoning, excerpted in part above, stands in stark contrast to the terse testimony found insufficient in the cases cited by Gramm. BlBr.41, 52-53; *e.g.*, *Whitserve, LLC v. Computer Packages, Inc.*, 694

---

[8] Although this evidence sufficiently showed a motivation to combine Chmielewski and Cleveland, a POSITA would have also known how to calibrate a flexible sensor arm, if that were a requirement of claims 1 or 27, as discussed in Section III.B.1, *infra*, 46.

[9] Accordingly, this case is unlike *Kinetic Concepts* where the record was "devoid of any reason someone would combine these references . . . ." *See Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1369 (Fed. Cir. 2012). Further, *Cumberland Pharms*. and *Innogenetics* are distinguishable from this case, because those cases are directed toward a motivation to combine in the biochemical context, unlike the mechanical context at issue here. *See Cumberland Pharms. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1214 (Fed. Cir. 2017); *Innogenetics, N.V. v. Abbott Labs*., 512 F.3d 1363, 1368 (Fed. Cir. 2008).

F.3d 10, 24 (Fed. Cir. 2012) ("Yes, they're all invalid because of prior art. . . . And are all the elements of those claims disclosed in the Schrader patent? . . . Yes, they are."); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1328 (Fed. Cir. 2012) ("The motivation to combine would be because you wanted to build something better. You wanted a system that was more efficient, cheaper, or you wanted a system that had more features, makes it more attractive to your customers, because by combining these two things you could do something new that hadn't been able to do before."); *see also In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1378-79 (Fed. Cir. 2016) (finding arguments incorporated by reference insufficient).

Moreover, Gramm never characterized Mr. Lucas's testimony regarding modifying Chmielewski with Cleveland's flexible arm as conclusory before the Board below, and thus waived this argument. *See Warsaw*, 832 F.3d at 1333 ("[I]n its response to NuVasive's petition, Warsaw did not raise this argument. Accordingly, Warsaw has waived this argument."); *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 450 (Fed. Cir. 2015) ("[I]t is important that the applicant challenging a decision not be permitted to raise arguments on appeal that were not presented to the [PTAB].").

### C. The Board Correctly Rejected Gramm's Argument That Cleveland's Intended Purpose Would Be Compromised By 90-Degree Rotation

The Board provided three independent reasons for rejecting Gramm's argument that incorporating Cleveland's sensor arm in Chmielewski's header height control system would render Cleveland ineffective for its intended purpose. Appx45-47; Appx116-118; BlBr.27-40. As explained below, each of those reasons is supported by substantial evidence. *See Paice LLC v. Ford Motor Co.*, No. 2016-1647, 2017 U.S. App. LEXIS 3980, at *12-19 (Fed. Cir. Mar. 7, 2017) (affirming Board's obviousness holding, because it was supported by substantial evidence). And each, standing alone, is sufficient to reject Gramm's "intended purpose" argument on appeal. *See* BlBr.28-40.

#### 1. Cleveland's intended purpose is not relevant to the obviousness of replacing the Chmielewski sensors with Cleveland's sensor arm

Gramm has no argument against the obvious combination of the prior art identified by the Board, so Gramm creates his own view of the prior art to argue that the combination renders Cleveland unfit for its purported intended purpose. BlBr.34-38. The Board correctly recognized that Gramm's focus on Cleveland's intended purpose flipped the obviousness analysis backwards. Appx41 n.20; Appx46; Appx112 n.19; Appx117. Both Deere and the Board began their

obviousness analysis with the Deere Corn Head and Chmielewski's header height control system—not Cleveland.[10] Using this framework, the Board correctly noted

> the inquiry isn't whether applying a modification of Cleveland's teachings (by rotating the probe assembly 90 degrees) when combining with those of Chmielewski renders Cleveland inoperable for its intended purpose, because the structure being modified is being added to the teachings of Chmielewski, not Cleveland. Petitioner does not propose removing Cleveland's probe assembly, rotating it, and then placing it back onto Cleveland's vehicle.

Appx46; Appx117. Notably, Gramm does not dispute that a POSITA would have understood that Chmielewski's header height control system would detect ground elevation changes (the relative distance between the header and the ground) in the direction of travel when modified to include Cleveland's flexible arm to avoid breakage. *See* Appx678; Appx2858-2859, ¶ 81; BlBr.21,30,39. Thus, Gramm's arguments regarding Cleveland's purported inoperability for its intended purpose are irrelevant when the prior art is viewed as a POSITA would view it (and as Deere asserted in its Petitions and the Board applied it) by beginning with the Deere Corn Head and Chmielewski's header height control system and then substituting Cleveland's sensor arm for Chmielewski's sensors. Appx2256-2257, 130:13-131:4; *supra* footnote 10, at 32.

---

[10] Appx1340-1349, ¶¶ 131-144; Appx213-221; Appx1551-1559, ¶¶ 129-142; Appx278-286; Appx19; Appx46; Appx89-90; Appx117.

The cases Gramm cites are inapposite here because, in each, this Court or its predecessor found a claimed invention not obvious where modifying the ***primary*** reference to arrive at the claimed invention would render the ***primary*** reference unfit for its intended purpose. *See* BlBr.34-36, 38 (citing *In re Ratti*, 270 F.2d 810 (CCPA 1959); *In re Fritch*, 972 F.2d 1260 (Fed. Cir. 1992); *In re Gordon*, 733 F.2d 900 (Fed. Cir. 1984)). In *Ratti*, the Chinnery reference's prior art oil seal was "principally relied on," but "point[ed] away from the addition of any spring element" as claimed. 270 F.2d at 811, 813. Similarly, in *Fritch*, the Wilson reference was the *sole* reference raised by the Patent Office on appeal and the "Board's opinion rel[ied] heavily" on it, but Wilson "lack[ed] any suggestion or incentive to use its water conduit as a landscape retainer since this would arguably result in clogged sprinkler heads." 972 F.2d at 1264-66. In *Gordon*, the French reference was likewise the *sole* prior art reference. 733 F.2d at 901. By contrast, the Board here did not rely on Cleveland as a primary reference. *See* Appx19; Appx46; Appx89-90; Appx117. Instead, Cleveland simply supplies a flexible sensor arm suitable for use with the header height control system of Chmielewski.[11]

[11] Appx1905, 2:59-65; Appx1907, 5:9-12; Appx1313, ¶ 49; Appx1343-1344, ¶ 138; Appx1525-1526, ¶ 48; Appx1554-1555, ¶ 136; Appx188-190, Appx210-211, 216-218; Appx254-256, Appx275-276, Appx282-283.

Gramm's heavy reliance on *Ratti*, *Fritch*, and *Gordon* is misplaced for the additional reason that these cases are "inapplicable where the modified apparatus will operate 'on the same principles as before.'" *See In re Mouttet*, 686 F.3d 1322, 1332 (Fed. Cir. 2012) (distinguishing *Ratti* (citing *In re Umbarger*, 407 F.2d 425, 430-31 (CCPA 1969))); *see also In re Urbanski*, 809 F.3d 1237, 1244 (Fed. Cir. 2016) (distinguishing *Gordon*). Cleveland states that "[a]mong the several objects of the present invention may be noted . . . the provision of a device which includes a sensing probe having complete flexibility so that it can deflect out of shape . . . ." Appx1905, 1:61-2:4. Thus, unlike the prior art in *Ratti*, *Fritch*, and *Gordon*, Cleveland's arm operates by the same principle of using flexibility to permit the deflection without breakage both when used in either Cleveland itself and when used in Chmielewski's system. Appx1875, 1:24-26; Appx1905, 1:61-2:4; Appx1343-1344, ¶ 138; Appx1554-1555, ¶ 136. Moreover, the overall purpose of Cleveland and the prior art combination are the same: detection of where agricultural equipment is relative to the ground.[12]

[12] Because substantial evidence establishes that the combination of Chmielewski and Cleveland would be operable, this case is not like *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.* or *In re Chu* where the proposed combination would have produced a device prone to fail. *Depuy*, 567 F.3d 1314, 1327-28 (Fed. Cir. 2009); *Chu*, 66 F.3d 292, 299 (Fed. Cir. 1995); Appx1875, 1:24-26; Appx1905, 1:4-6; Appx1343-1344, ¶ 138; Appx1554-1555, ¶ 136; Appx216; Appx282; BlBr.25-26.

### 2. Even if Cleveland's purpose were relevant, rotating Cleveland 90 degrees does not defeat Cleveland's purpose

Even if Cleveland's purpose were relevant, substantial evidence supports the Board's determination that rotating Cleveland's arm 90 degrees "would [not] defeat Cleveland's purpose because after modification Cleveland's probe assembly would still be used to detect relative motion in the plane in which it operates." Appx41 n.20; Appx1905-1906, 1:4-6, 4:5-8, 39-54 & Fig. 6; Appx2256-2257, 130:13-131:4; Appx2835, ¶ 43; Appx1042, 44:15; Appx46-47; Appx112 n.19; Appx117-118.

Cleveland is directed to "a device for sensing the relative position of a moving vehicle with respect to a furrow in the ground." Appx1905, 1:4-6, *cited by* Appx15. By swinging side-to-side as the agricultural vehicle moves forward, Cleveland's sensor arm is used to detect positional changes of the vehicle relative to the ground. Appx1906, 4:39-54; Appx15-18.

In the prior art combination, by swinging forward-and-backward as the agricultural vehicle moves forward, Cleveland's sensor arm is used to detect positional changes of the agricultural vehicle relative to the ground. Appx2256-2257, 130:13-131:4; Appx39-41; Appx110-112; Appx812-813; Appx838-839. Thus, the purpose of Cleveland's sensor arm in Cleveland and the prior art combination is the same: it detects relative motion between the agricultural vehicle

and the ground in the plane in which the sensor arm operates. Appx1905-1906, 1:4-6, 4:39-54; Appx41 n.20; Appx46-47; Appx112 n.19; Appx117-118; Appx812-813; Appx838-839.

The Board provided additional reasons for its decision, stating that "the purpose of the probe assembly in Cleveland is to detect elevation changes (i.e., from the deepest portion of the furrow (*see* [Appx1906], 4:39-54)), and that purpose remains unchanged when the teachings of Cleveland's probe assembly are combined with those of Chmielewski and [the Deere Corn Head] because the sensor arm/probe assembly still detects elevation changes." Appx41 n.20; Appx46-47; Appx112 n.19; Appx117-118. This determination is supported by Cleveland itself, which detects any angular deflections in its sensor arm from its position in the furrow, particularly as a Board member noted, "once it comes out of the trough and comes up the side." Appx1042, 44:15; *see also* Appx1906, 4:5-8, 39-54; Appx1904, Fig. 6. Indeed, even Gramm's expert, Mr. Matousek, despite his denigration of the Cleveland device, appears to admit Cleveland's purpose is to detect elevation changes when he references "the ***height sensing*** arm of Cleveland." Appx2835, ¶ 43 (emphasis added).[13]

[13]At oral argument, Deere's counsel agreed that Cleveland detects lateral motion. Appx999-1000; Appx1011, 13:8-14; *see* Appx3416; Appx3432 (slide 17); BlBr.32. However, Deere's counsel never stated that Cleveland ***only*** detects lateral motion.

In short, Gramm's argument seeks this Court to reconsider the teachings of the prior art references that were already considered by the Board. *See* BlBr.30-34. This Court has made clear, however, that it "may not reweigh facts already considered by the PTAB," but rather "determine[s] whether substantial evidence supports the [PTAB's] fact findings." *Warsaw*, 832 F.3d at 1333-34 (quoting *In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011)). Here, the Board's findings are supported by substantial evidence. *See Allied Erecting*, 825 F.3d at 1380 ("A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding." (quoting *K/S HIMPP v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1364 (Fed. Cir. 2014))).

### 3. A POSITA would have rotated Cleveland's sensor arm even if such rotation would negate Cleveland's purpose

The Board expressly found the claimed combination would have been obvious even if rotating Cleveland's sensor arm would have negated Cleveland's purpose:

> even if rotating the probe assembly of Cleveland would negate Cleveland's purpose (which we find it would not), we disagree that such result would have led one of ordinary skill in the art *not* to rotate Cleveland's probe assembly when combining those teachings with the teachings of [the Deere Corn Head] and Chmielewski.

Appx41 n.20; Appx47; Appx112 n.19; Appx118.[14] Like the Board's other independent grounds, this finding, too, is supported by substantial evidence. *See Jolley*, 308 F.3d at 1320.

The evidence established that rotating Cleveland's probe assembly would have been routine for a POSITA. Appx2858-2859, ¶ 81, *cited by* Appx40-41 & nn.18-19; Appx2256-2257, 130:13-131:4. The Board correctly observed: "Neither Patent Owner nor Mr. Matousek asserts that the modification he proposes is beyond the level of ordinary skill in the art at the time of the invention." Appx40 n.18. Indeed, Gramm does not challenge the Board's findings that Gramm's own expert testimony evidences that rotating Cleveland "would have been well within the level of ordinary skill in the art at the time of the invention." Appx40. Gramm also does not dispute the Board's observation that "paragraph 81 of the Matousek Declaration explains, in detail, precisely how such modification would be accomplished." Appx2858-2859, ¶ 81, *cited by* Appx40. In Paragraph 81, Mr. Matousek described exactly how Cleveland's arm would be "rotated 90 degrees so the plate 18 is re-oriented to be parallel to the direction of travel of the vehicle," allowing the "swing member 20 [to be] free to [swing] up and down with changes in elevation":

---

[14] The Board's reasoning is consistent with *Gordon*, *Ratti*, and *Fritch* for the reasons discussed in Section II.C.1, *supra*, 31.

> To illustrate this point, reference is made to Sketch 2 below, which is a copy of Fig. 6 of Cleveland with a crop divider drawn in to provide reference to the orientation of the plate 18 and the longitudinal axis of bolt 30 with respect to the forward direction of travel 80. As shown in Sketch 2, the plate is now parallel to the direction of travel 80 of the combine header so that that longitudinal axis of bolt 30 *is* transverse or perpendicular with the forward direction of travel of the combine header.[15]



Sketch 2

Appx2858-2859, ¶ 81. Thus, Gramm's expert confirms that the Board was correct. *See id.*

Still further, Mr. Lucas's testimony supports the Board's conclusion. *See* Appx1343-1345, ¶¶ 138-39; Appx1554-1556, ¶¶ 136-37; Appx2256-2258, 130:13-132:14. In his declarations supporting Deere's IPR petitions, Mr. Lucas stated: "A POSITA would have understood that replacing the contact sensor 236 and 237 of Chmielewski with the sensor arm of Cleveland would have . . . allow[ed] for the accurate measurement of the header height." Appx1343-1344, ¶ 138; Appx1554-

---

[15] Gramm argues that this destroys Cleveland's intended use, but as described in Section II.C.1, *supra*, 31 and Section II.C.2, *supra*, 35, that argument is without merit.

1555, ¶ 136; Appx217; Appx282. Mr. Lucas did not use the words "90 degrees" here, but his statement meant as much. Indeed, Gramm's Blue Brief acknowledges that Cleveland's sensor arm "***must be***" "rotat[ed] 90 degrees . . . to detect ground elevation changes." BlBr.21 (emphasis added).

Mr. Lucas also testified that a POSITA would have ***replaced*** Chmielewski's sensors with Cleveland's sensor arm. *See, e.g.*, Appx1344-1345, ¶ 139; Appx1555-1556, ¶ 137; Appx217-218; Appx282-283. This, too, means that Cleveland's sensor arm would have been rotated 90 degrees in the prior art combination, because a POSITA would have rotated the arm 90 degrees so that it would swing the same way (forward-and-backward) and measure the same thing (height) as Chmielewski's sensors. *See, e.g.*, Appx1344-1345, ¶ 139; Appx1555-1556, ¶ 137. Mr. Lucas also confirmed the 90-degree rotation at his deposition. Appx2127-2132; Appx2256-2258, 130:13-132:14; *see In re Icon Health & Fitness, Inc.*, 496 F.3d 1374, 1382 (Fed. Cir. 2007) ("[W]e do not ignore the modifications that one skilled in the art would make to a device borrowed from the prior art.").

#### 4. The combination of Chmielewski and Cleveland meets the second element of claim 27

Gramm argues that Cleveland's sensor arm does not "rotationally displace[] [the] rotation sensor," as recited in claim 27. BlBr.39. Gramm's argument presupposes that Cleveland's sensor arm is not rotated 90 degrees when incorporating it into Chmielewski's header height control system, which is wrong

for all of the reasons highlighted above. *See* Sections II.C.1-3, *supra*, 31-40. As discussed above, it would have been obvious for a POSITA to rotate Cleveland's sensor arm 90 degrees when incorporating it into Chmielewski's header height control system. *See id.* In this configuration, Cleveland's sensor arm "rotationally displaces [the] rotation sensor," as recited in claim 27. *See* Appx1906, 4:39-54, Appx1337, ¶ 121, Appx1548, ¶ 119, Appx1089, 10:1-22; Appx210-211, Appx275-276.

## III. THE BOARD ALSO CORRECTLY REJECTED GRAMM'S ARGUMENT THAT A POSITA WOULD LACK A REASONABLE EXPECTATION OF SUCCESS

### A. Substantial Evidence Demonstrates A Reasonable Expectation Of Success In Combining Chmielewski And Cleveland

Gramm's attack on the Board for "not mak[ing] any finding that a POSITA would perceive a reasonable expectation of success" should be rejected because the Board clearly addressed the issue in its decision. BlBr.49; *see* Appx27; Appx37-38; Appx48. First, Gramm ignores that the Board expressly acknowledged Gramm's arguments regarding a reasonable expectation of success before finding the claimed subject matter obvious. Appx27 ("Patent Owner asserts that 'Chmielewski certainly would not suggest to a [person of ordinary skill in the art] a finite number of predictable solutions with a reasonable expectation of success for mounting the height sensor to the forward tip of a cut crop head.'" (alteration in

original)); Appx37 ("Patent Owner again argues that obviousness is limited to situations where elements can *only* be combined in a finite number of ways with a reasonable expectation of success."); Appx38 ("Patent Owner contends that one of ordinary skill in the art would not have had a reasonable expectation of success . . . ."). The Board, thus, expressly considered whether there would have been a reasonable expectation of success. Appx27; Appx37; Appx38. And by holding that claims 1 and 27 would have been obvious, the Board resolved this issue in Deere's favor. *See* Appx68.

Gramm's attack also ignores the fact that the Board did not use the phrase "reasonable expectation of success" in its findings because the expectation of success was not just "reasonable," it was "predictable." Appx1343-1345, ¶¶ 138-39; Appx1554-1556, ¶¶ 136-37; Appx216-218; Appx282-283; *see* BlBr.28, 49, 60. Specifically, the Board concluded in relevant part that a POSITA "would have been prompted to replace each of Chmielewski's contact sensors with Cleveland's sensor arm . . . ***to achieve the predictable result*** of improved flexibility provided by Cleveland's sensor arm, the benefits of which permit traversing foreign objects without breaking or being damaged." Appx48 (emphasis added).

The Board's finding that this success was predictable is supported by Mr. Lucas's expert testimony that:

- Replacing the sensors of "Chmielewski with the sensor arm of Cleveland would have ***predictably*** resulted in a sensor arm that had improved flexibility . . . ." Appx1343-1344, ¶ 138, *cited by* Appx217; Appx1554-1555, ¶ 136, *cited by* Appx282 (emphasis added).
- The replacement "would have ***predictably*** resulted in using the same sensor connecting pieces as Cleveland." Appx1344-1345, ¶ 139, *cited by* Appx217; Appx1555-1556, ¶ 137, *cited by* Appx283 (emphasis added).
- "This connection is mechanical in nature and would have been accomplished according to known methods to yield the ***predictable*** result of sensing the angular deflection of an arm." Appx1344-1345, ¶ 139, *cited by* Appx218; Appx1555-1556, ¶ 137, *cited by* Appx283 (emphasis added).

*See also* Appx1345, ¶ 140; Appx1556, ¶ 138.

Gramm's demand that the exact phrase "reasonable expectation of success" be recited by Deere and the Board is also contrary to the Supreme Court's instruction in *KSR International Co. v. Teleflex Inc*. that the obviousness analysis should not be confined to rigid, formulistic rules. 550 U.S. 398, 419 (2007); BlBr.49. The phrase "reasonable expectation of success" appears nowhere in *KSR*. Accordingly, this Court has acknowledged that "*KSR* does not require an explicit

statement of a reasonable expectation of success in every case." *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 836 (Fed. Cir. 2015).

None of the cases cited by Gramm mandates an explicit statement about a reasonable expectation of success, and, in any event, the cases are distinct from the facts of this case. BlBr.26-27, 49-50.[16] *Amgen*, *Dome*, *Noelle*, and *Intelligent Bio-Systems* are also distinguishable because they address a reasonable expectation of success in the chemical/biological composition context, as opposed to the predictable, mechanical arts like that at issue in the '395 patent. *Compare Amgen*, 580 F.3d at 1360, *Dome*, 799 F.3d at 1375, 1383, *Noelle*, 355 F.3d at 1353, *and Intelligent Bio-Sys.*, 821 F.3d at 1367-68, *with* Appx1079, Abstract. As this Court has observed, "the nature of the mechanical arts is such that 'identified, predictable solutions' to known problems may be within the technical grasp of a skilled artisan." *See Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1371 (Fed. Cir. 2011).

The Court's findings of nonobviousness in *Arendi* and *Magnum* are not applicable because they were driven by missing proofs while proofs are

[16] *See Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355 (Fed. Cir. 2016); *Magnum*, 829 F.3d 1364; *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359 (Fed. Cir. 2016); *Dome Patent L.P. v. Lee*, 799 F.3d 1372 (Fed. Cir. 2015); *Amgen Inc. v. F. Hoffman-La Roche, Ltd.*, 580 F.3d 1340 (Fed. Cir. 2009); *Noelle v. Lederman*, 355 F.3d 1343 (Fed. Cir. 2004).

indisputably present in the record here.[17] *See* BlBr.50. In *Arendi*, a claim limitation was simply not present in the prior art. 832 F.3d at 1366-67. In *Magnum*, an expert's testimony on obviousness based on a first set of prior art references (references A, B & C) was insufficient to demonstrate obviousness based on a second set of prior art references (references B, C & D). 829 F.3d at 1378-79. In contrast to *Arendi* and *Magnum*, there is no meaningful dispute here that all limitations of claims 1 and 27 are found in the prior art or that Deere's expert testimony analyzes the distinct prior art relied on in each petition. Appx1310-1317, ¶¶ 43-58; Appx1336-1338, ¶¶ 118-125; Appx1523-1529, ¶¶ 42-56; Appx1547-1549, ¶¶ 116-123; Appx54-60; Appx125-131.

### B. Unclaimed Features Are Not Relevant To A POSITA's Reasonable Expectation Of Success

The Board correctly recognized that unclaimed features are not relevant to a POSITA's reasonable expectation of success. *See* Appx42, Appx45. *See Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1292 (Fed. Cir. 2013) ("[T]he person of ordinary skill need only have a reasonable expectation of success of ***developing the claimed invention***.") (emphasis added); *Warsaw*, 832 F.3d at 1333 ("As part of the obviousness inquiry, we consider 'whether a [POSITA] would have been

---

[17] *Compare Arendi*, 832 F.3d at 1366-67, *and Magnum*, 829 F.3d at 1378-79 *with* Appx1310-1317, ¶¶ 43-58, Appx1336-1338, ¶¶ 118-125, Appx1523-1529, ¶¶ 42-56, Appx1547-1549, ¶¶ 116-123, Appx54-60, *and* Appx125-131.

motivated to combine the prior art to ***achieve the claimed invention*** and whether there would have been a reasonable expectation of success ***in doing so***.'") (emphases added).

Gramm ignores this law and focuses on a string of unclaimed properties, including "accurate height detection," miniaturized sizing, and sufficient robustness to "remain functional and undamaged, in the violent environment of corn harvesting." BlBr.48-61. Claims 1 and 27, however, do not require any particular level of accuracy in height detection. *See* Appx1088, 7:28-56; Appx1089, 10:1-22. And the Board correctly observed that no claim limitation "requires an explicit size or robustness for the plate and linkages"—a point Gramm does not dispute on appeal. Appx45. As such, Gramm's suggested properties are not relevant for determining that there was a reasonable expectation of success in making the claimed invention. *See Allergan*, 726 F.3d at 1292.

Even if Gramm's suggested properties were relevant (and they are not), the substantial evidence detailed below supports the Board's findings that the combination of the Deere Corn Head, Chmielewski, and Cleveland would achieve these properties. Appx42; Appx45; Appx113-114; Appx116.

### 1. The Board correctly rejected Gramm's arguments regarding accurate height detection and calibration

The first of Gramm's unclaimed properties is accurate height detection. BlBr.51-55. Contrary to Gramm's arguments here, the evidence before the Board

did not indicate that Cleveland's sensor arm would bend too much during operation for height detection. Instead, as discussed in Section II.B.2, *supra*, 27, Cleveland states, "Spring 38 is flexible along its longitudinal axis but is adapted to maintain its ***straight*** configuration in absence of bending forces being applied thereto." Appx1905, 2:60-63 (emphasis added); Appx1904, Fig. 6; Appx1313, ¶ 49; Appx1525-1526, ¶ 48; Appx189-190; Appx255. Also, according to Mr. Lucas's expert testimony, Cleveland's sensor arm "would have still been sufficiently rigid so as to allow for the accurate measurement of the header height." Appx1343-1344, ¶ 138, *cited by* Appx217; Appx1554-1555, ¶ 136, *cited by* Appx282.

Additionally, the testimony of Gramm's expert, Mr. Matousek, regarding the feasibility of height detection with a bendable arm having a spring was negated by Gramm's own admissions.[18] *See* Appx3116, 197:6-13, 18-21; Appx646-647; Appx2859-2861, ¶¶ 82-83. Mr. Gramm confirmed during his deposition that a sensor arm with a spring would accurately serve as a height sensor:

> **Q.** Does the use of a spring in a sensor arm impact the ability of that arm to accurately detect irregularities in the ground?
>
> ***A.*** *If it meets the requirements of being pre-loaded properly, it can accurately tell the changes in the ground.*

---

[18] Mr. Matousek's testimony also relies on the faulty assumption that a POSITA would bend the Cleveland spring rearwardly when using it with Chmielewski's header height control system. Appx2860-2861, ¶ 83.

Appx3116, 197:6-13 (objection omitted); Appx2920-2922. And, according to Mr. Gramm, "preloaded" simply "means that you must apply a force to the spring . . . to bend it[.]" Appx3116, 197:18-21; Appx646-647. Because the spring in Cleveland's arm requires a force to bend it, Appx1905, 2:60-63, Mr. Gramm's testimony confirms that Cleveland's arm would work to accurately detect height changes. Appx3116, 197:6-13, 18-21.

On top of this, Gramm's arguments here ignore the fact that the '395 patent discloses ***and claims*** a sensor arm with a spring. Appx1079-1090. Notably, the '395 patent does not identify any special difficulty in measuring height or calibrating when using a sensor arm with a spring. *See* Appx1085-1090. Gramm's own patent, thus, illustrates that Gramm's arguments are not credible. *See* Appx1079-1090.

In any event, Chmielewski describes a calibration process for dealing with sensor arms in a header height control system in great detail. Appx1894-1895, 39:35-41:5; Appx1879, 9:34-47; Appx820; *see* BlBr.47-48.[19] "The person of

[19] Contrary to Gramm's claim that Deere mischaracterized Chmielewski at the oral hearing (Bl.Br.47 n.3), the slide Deere referenced (slide 71) cites to Chmielewski's disclosure of a detailed calibration process for a header height control system suitable for use with "different headers to accommodate different crops . . . ." Appx1894, 39:39; Appx1016-1018, 18:4-20:24; Appx3486 (slide 71) (citing Appx1879, 9:34-47; Appx1894-1895, 39:35-41:5). Deere did not argue that Chmielewski discloses a spring nor that a spring is calibrated, but rather that Chmielewski discloses calibration of a header height system and sensors, and

ordinary skill in the art is a hypothetical person who is presumed to know the relevant prior art." *In re GPAC Inc*., 57 F.3d 1573, 1579 (Fed. Cir. 1995). Mr. Matousek's testimony regarding the accuracy of height detection achievable with a sensor arm including a spring was rebutted by Chmielewski's teaching how to calibrate sensors where "normal use can bend the sensing arm of sensors 236 and 237 and actually change the output signal values even though the sensors are still functional." Appx1894, 39:44-46; *see* Appx2859-2861, ¶¶ 82-83. The Board properly evaluated and credited Chmielewski's disclosures over the testimony of Mr. Matousek that Gramm cites on appeal. *See VirnetX Inc. v. Apple Inc*., 665 Fed. Appx. 880, 884 (Fed. Cir. 2016) ("[E]ven if the record contains [expert] testimony, the PTAB must weigh that testimony against other record evidence in reaching its conclusion, and it may give that testimony less weight, so long as it supports its decision with substantial evidence.").

Gramm relies on nothing more than attorney argument presented for the first time on appeal (and thus waived) in his attempt to discount the application of the calibration teachings of Chmielewski to a sensor arm.[20] *See* BlBr.44-46. Gramm's

---

such calibration would "account for the spring's impact, if any." Appx3486 (slide 71).

[20] Mr. Matousek only states the following about Chmielewski's calibration: "Chmielewski goes into great detail about . . . how the height system for the cut crop header is calibrated and functions . . . ." Appx2849, ¶ 68. Gramm's counsel made only a cursory reference to calibration at the oral hearing, without even

argument that Chmielewski is insufficient to teach calibration of a flexible sensor arm is disingenuous considering how minimally the ’395 patent teaches calibration of its flexible sensor arm. *See* Appx1079, Abstract; Appx1087, 5:28-35, 38-43; BlBr.44-46. The only mention of calibration in the ’395 patent specification is:

> Calibration of each of a plurality of height sensors 14 mounted to a header in the full down position is accomplished by appropriate rotation of each rotation sensor 48 about its associated shaft 64 using the aforementioned elongated slots 48b and 48c in the sensor and 26e and 26f in flange 26c.

Appx1087, 5:38-43.[21] Chmielewski teaches calibration in more detail spanning well more than a full column, Appx1894-1895, 39:35-41:5, including the “fully extended” “just making ground contact” position discussed by Gramm to obtain a maximum working height, Appx1894, 40:31, 50-51; BlBr.45, as well as lowering the header to obtain the minimum working height, Appx1984, 40:53-62, depending on the “sensing capabilities” of the sensors. Appx1894, 40:3-7. By arguing that Chmielewski’s teachings are insufficient, Gramm casts doubt on whether the ’395 patent’s minimal calibration disclosure is adequately enabling. *See* Appx1079, Abstract; Appx1087, 5:28-35, 38-43; BlBr.44-46. *See Apple Inc. v. Int’l Trade*

identifying Chmielewski. Appx1047, 49:21-24. As a result, Gramm has waived these arguments on appeal. *See Warsaw*, 832 F.3d at 1333; *Redline Detection*, 811 F.3d at 450.

[21] This concept is summarized in the abstract at Appx1079 and the slots are further described at Appx1087, 5:24-35.

*Comm'n*, 725 F.3d 1356, 1362 n.1 (Fed. Cir. 2013) (finding prior art's disclosure sufficient where it "is virtually identical" to that in the patent itself).

Given the foregoing, the Board properly credited Deere's evidence over the testimony of Mr. Matousek that Gramm cites on appeal. *See* Appx42; BlBr.53. This Court's role in assessing whether substantial evidence supports the Board's findings does not involve "reweigh[ing] facts already considered by the PTAB." *See Warsaw*, 832 F.3d at 1333-34. Substantial evidence supports the Board's conclusions.

#### 2. The Board also correctly rejected Gramm's arguments regarding the "size" or "robustness" of the prior art combination

Gramm's other unclaimed elements are size and robustness. *See* BlBr.55-61. The Board correctly found that nothing in claims 1 and 27 requires any particular "size" or level of "robustness." Appx45 ("Patent Owner has not identified any limitation in claim 1 that requires an explicit size or robustness for the plate and linkages."); *see also* Appx30. These findings by the Board were not contested by Gramm. Therefore, Gramm's size/robustness arguments are irrelevant. *See Allergan*, 726 F.3d at 1292; *Warsaw*, 832 F.3d at 1333.

##### a. Size

Even if claims 1 and 27 included a size requirement, the Board correctly found that "modifying the size of Cleveland's plate and linkages to fit [the Deere

Corn Head] was within the ordinary level of skill" because "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton." Appx45 (quoting *KSR*, 550 U.S. at 421); Appx116; Appx1342-1343, ¶¶ 134-137; Appx1553-1554, ¶¶ 132-135. The Deere Corn Head, Chmielewski, and Cleveland are agricultural equipment, and the plate and linkages are composed of simple metal brackets, nuts, and bolts. Appx1902, Abstract; Appx1845, Abstract; Appx1740; Appx1758-1759; Appx1838, Abstract; Appx1903-1905, 2:44-74, Figs. 1, 2, 6. "One skilled in the art would size the components from [Cleveland] appropriately for [the Deere Corn Head/Chmielewski's] application . . . ." *See Icon*, 496 F.3d at 1382; *see also* Appx2252-2254, 126:4-128:14; Appx2918-2919.

Mr. Lucas's expert testimony also supported these findings. Appx1342-1343, ¶¶ 134-137; Appx1553-1554, ¶¶ 132-135; Appx2252-2254, 126:4-128:14; Appx2918-2919. Mr. Lucas explained that (1) incorporating a header height sensor into the Deere Corn Head was "mechanical in nature and would have been accomplished according to known methods to yield the predictable result of determining and adjusting the height of a non-cut crop header"; and (2) as analogous art, "[i]t would have been within the technical grasp of a POSITA to modify Chmielewski's automated header height system ***to fit*** with the [Deere Corn Head] . . . ." Appx1342-1343, ¶¶ 134-137 (emphasis added); Appx1553-1554, ¶¶ 132-135. Mr. Lucas also confirmed at his deposition that "a scaled version" of

Cleveland's sensor arm could be put into the tip of the Deere Corn Head. Appx2252-2254, 126:4-128:14; Appx2918-2919. In any event, as discussed above, the correct inquiry is "not whether the references could be physically combined but whether the claimed inventions are rendered obvious by the teachings of the prior art as a whole." *Mouttet*, 686 F.3d at 1332 (quoting *In re Etter*, 756 F.2d 852, 859 (Fed. Cir. 1985) (en banc)).

This Court has previously found that a POSITA would size prior art components appropriately. *Icon*, 496 F.3d at 1382. In *Icon*, this Court rejected an argument that a prior art spring was inoperable due to large size, because it "ignore[s] the modifications that [a POSITA] would make to a device borrowed from the prior art." *Id.* The same principles apply here.

**b. Robustness**

Even if claims 1 and 27 required robustness, Gramm's robustness argument relies on a faulty premise. *See* Appx2863-2864, ¶ 87; Appx1343-1344, ¶ 138; Appx1554-1555, ¶ 136. In particular, Gramm's expert, Mr. Matousek, testified that components from Cleveland, including a slot (28), switch link (62), and slot pin (64), would work together in a way that was not sufficiently robust. *See* Appx2863-2864, ¶ 87; BlBr.56-57. But Deere (including Deere's expert, Mr. Lucas) never included such components in their prior art combination for claims 1

and 27.[22] *See* Appx1343-1344, ¶ 138, *cited by* Appx216-217; Appx1554-1555, ¶ 136; Appx282. Thus, Gramm's arguments do not even address the prior art combination relied upon by the Board. Appx32; Appx37; *see* BlBr.56-57.

Further, explicit teachings from Cleveland contradict Mr. Matousek's insistence that particular unnecessary components would be required: "The particular pivotal mechanism used for swing member 20 [in Cleveland's sensor arm] ***may vary without detracting from the invention***, but it must be sturdily constructed." Appx1905, 2:56-58 (emphasis added). Cleveland, thus, encourages other attachment arrangements as long as they are sturdy. *Id.*

The Board acknowledged that Gramm himself admitted during cross-examination that, despite his "robustness" criticisms, the prior art combination, using the same unnecessary components from Cleveland (a slot, switch link, and slot pin) that Mr. Matousek improperly included, would work for harvesting corn for "perhaps a week." Appx3131-3132, 212:12- 213:3, *cited by* Appx30; *see* Appx2771; Appx2792, ¶ 70. Mr. Gramm tried to temper his admission but could not disclaim it:

---

[22] Gramm refers to limitations, e.g., "stop means," that only appear in dependent claims to suggest that these components should also be included, but Gramm did not argue the merits of the dependent claims before the PTAB and does not directly address the dependent claims on appeal. Appx1088, 8:3-7; Appx1089, 9:12-16, 25-27; *see* BlBr.56. Therefore, Gramm has waived those arguments. *See Warsaw*, 832 F.3d at 1333; *Redline Detection*, 811 F.3d at 450.

**Q.** At paragraph [70] of your declarations, if you could turn to that, please. In that paragraph you state that the cornstock debris would become wedged in the linkages, thus clogging them after only a short distance of actual use in a cornfield.

***A.*** *Yes.*

**Q.** What distance?

***A.*** *What distance?*

**Q.** Yes.

***A.*** *Perhaps a day, perhaps a week. I don't see anything longer than that.*

**Q.** When you say "day," you mean a day's worth of harvesting corn?

***A.*** *Yes. And most likely much shorter than that.*

Appx3131-3132, 212:12- 213:3. In response to a leading question on redirect, Mr. Gramm again tried to minimize his admission by stating that a week of harvesting was the "most optimistic" of possibilities and that "it could be seconds or minutes." Appx3198, 279:20; Appx3214-3215, 295:19-296:19. Despite this, Mr. Gramm never refuted that the prior art combination would work for a period of time. This admission confirms that the prior art combination works, even if Gramm's alleged commercial embodiment of the '395 patent purportedly works better. *See In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994); *In re Fulton*, 391 F.3d 1195, 1200 (Fed. Cir. 2004). Moreover, each reference in the prior art combination is a piece of agricultural equipment that was designed to be used in

the fields, not in a laboratory. *See* Appx1902, Abstract; Appx1845, Abstract; Appx1740; Appx1758-1759; Appx1838, Abstract.

Gramm cites to *McGinley v. Franklin Sports, Inc.* to suggest that a short duration of functionality does not demonstrate a reasonable expectation of success. BlBr.55. However, nothing in *McGinley* discusses the duration of functionality. *See* 262 F.3d 1339, 1354-55 (Fed. Cir. 2001).[23] As Deere argued during the IPR, if the prior art combination needed more robustness, a POSITA would have simply made the device stronger, such as by making the components thicker or using stronger materials, or by adding a guard plate (which Gramm does not dispute would have been obvious (*see* claim 29)). Appx817; Appx1905, 2:56-58.

## IV. GRAMM'S VAGUE ASSERTIONS ABOUT "CHANGED" ARGUMENTS ARE FACTUALLY AND LEGALLY FLAWED

Gramm's assertion that "Deere changed its arguments" during the course of the IPRs, BlBr.19-20, is belied by Deere's consistent reliance on the same combination of the Deere Corn Head, Chmielewski, and Cleveland throughout

[23] Although Gramm cites *McGinley*, which warns against using hindsight analysis where the prior art is relatively simple, 262 F.3d at 1351, "this court['s] . . . counsel is just that—a warning." *Ruiz v. A.B. Chance Co*., 357 F.3d 1270, 1276 (Fed. Cir. 2004). The Board's findings of a motivation to combine and a reasonable expectation of success were not "assumed," as Gramm claims, but based upon substantial evidence, including the prior art, expert testimony, and evidence put forth by Gramm himself. *See* Section II.B, *supra*, 24; BlBr.61.

both IPRs.[24] Deere's explanation of how a POSITA would combine the references has also been consistent from the start. *See supra* footnote 24, at 57. Specifically, in each petition, Deere noted that it would be obvious to a POSITA to replace the Chmielewski sensors with Cleveland's sensor arm—the same approach the Board later found obvious. Appx216-218; Appx282-283; Appx48; Appx119. And Deere did not submit any new declarations with its Replies; Deere relied upon the evidence already of record. *See supra* footnote 24 at 57.

As a preliminary matter, Gramm does not assert on appeal that Deere's purportedly "changed" arguments were improperly raised on reply. As such, any argument that these points were somehow improper reply argument is waived and cannot be raised by Gramm in its reply brief on appeal. *See SmithKline*, 439 F.3d at 1319. Even if not waived, the arguments Gramm contends Deere "changed" on reply were proper because they were "legitimately responsive to [Gramm's] arguments and not needed for a prima facie case of obviousness"[25]:

- For example, Gramm argued in his Responses that rotating Cleveland's arm 90 degrees would render Cleveland inoperable as a height sensor. Appx620; Appx678-679; Appx690; Appx748-750. In

---

[24] Appx187-193; Appx209-212; Appx216-218; Appx804-805; Appx811-814; Appx816-820; Appx252-258; Appx275-277; Appx282-283; Appx830-831; Appx837-840; Appx842-846.

[25] *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1080 (Fed. Cir. 2015).

addition to showing that Gramm's inoperability argument was irrelevant, Deere's Replies properly showed that claims 1 and 27 would have been obvious despite Gramm's inoperability argument. Appx797; Appx811-813; Appx824; Appx837-839.

- In addition, Gramm argued in his Responses that Cleveland's arm was not rigid enough (because it was designed to bend), small enough, or robust enough to function as a height sensor. Appx672-676; Appx743-747. Because none of these features is a limitation required by claims 1 or 27, Deere had no reason to discuss them in the Petitions. *See* Appx1088-1089, 7:29-56, 10:1-22. Deere, thus, properly explained in its Replies not only what is not claimed (accuracy, size, or robustness), but also identified the evidence that was already of record illustrating that a POSITA would have known how to adapt the proposed combination by calibrating the height control system, properly sizing the components, or making the components more robust to accommodate these alleged issues. Appx816-820; Appx842-846.

In each instance above, Deere's argument "fairly responds only to arguments made [by Gramm]"—exactly the type of reply arguments held proper by this Court. *See Belden*, 805 F.3d at 1078-79 (upholding Board's reliance on a declaration from a

new reply expert to "respond to the patent owner's criticisms," thus "confirm[ing] the prima facie case"); *see also Genzyme Therapeutic Prods. L.P. v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1367 (Fed. Cir. 2016) (holding Board properly relied on new reply references involving *in vivo* studies where patent owner "itself raised the issue of the *in vivo* studies in its patent owner responses").

Indeed, Deere's reliance on consistent grounds and presentation of strictly responsive arguments on reply stands in sharp contrast to cases like *Intelligent Bio-Systems* in which the petitioner's reply position "relied on an ***entirely new rationale*** to explain why [a POSITA] would have been motivated to combine [the references at issue]." 821 F.3d at 1370 (emphasis added); *see also Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1279 (Fed. Cir. 2017) (finding that petitioner shifted where "subsequent arguments amount[ed] to an entirely new theory of *prima facie* obviousness absent from the petition").

Finally, even if Deere had "changed" its arguments during the IPRs (and it did not), Gramm does not (and cannot) claim that Gramm was "denied a meaningful opportunity to respond to the grounds of rejection." *See Belden*, 805 F.3d at 1082. First, Gramm did not take full advantage of procedural remedies available to respond to any purportedly "changed" arguments such as "seek[ing] to file a surreply." *See id*. Second, to the extent Gramm did seek relief, the Board "granted every request [Gramm] made for consideration of the [purportedly

improper reply] issue." *See id*. For example, the Board granted Gramm's request for non-argumentative identification of evidence and arguments Gramm asserted exceeded the proper scope of Deere's Reply. Appx850; Appx853-856. Third, Gramm had an opportunity to address any purportedly new reply arguments at the oral hearing. Appx927. Gramm's arguments here lack merit.

## CONCLUSION

For the foregoing reasons, Deere respectfully requests that the Court affirm the Board's findings of unpatentability of claims 1-11 and 27-34 of the '395 patent in IPR2015-00898 and IPR2015-00899.

Respectfully submitted,

June 26, 2017

*/s/ Gary M. Ropski*
Gary M. Ropski
Jeff M. Nichols
Laura A. Lydigsen
Joshua H. James
Jafon L. Fearson
BRINKS GILSON & LIONE
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611

*Attorneys for Appellee*
*Deere & Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June 2017, I caused the foregoing brief to be electronically filed using the CM/ECF system, which will send notification of such filing to all parties of record.

I further certify that pursuant to Fed. R. App. P. 25(a)(2)(D) and 25(c), and Federal Circuit Rule 25(c)(1)(A), I shall cause six paper copies of the foregoing brief to be filed at the address provided below within five business days of the Court's acceptance of the foregoing brief in ECF:

Clerk of Court
United States Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

June 26, 2017

/s/ *Gary M. Ropski*
Gary M. Ropski
*Attorney for Appellee*
*Deere & Company*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,258 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14 point font.

June 26, 2017

Respectfully Submitted,

/s/ *Gary M. Ropski*

Gary M. Ropski
Jeff M. Nichols
Laura A. Lydigsen
Joshua H. James
Jafon L. Fearson
BRINKS GILSON & LIONE
NBC Tower – Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611

*Attorneys for Appellee*
*Deere & Company*