# United States Court of Appeals for the Federal Circuit

RICHARD GRAMM,

*Appellant*

v.

DEERE & COMPANY,

*Appellee.*

2017-1252, -1253

APPEALS FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, PATENT TRIAL AND APPEAL BOARD IN NOS. IPR2015-00898 & IPR2015-00899

## APPELLANT RICHARD GRAMM'S REPLY BRIEF

John A. Cotter
Thomas J. Oppold
David P. Swenson
Katherine E. Muller
**LARKIN HOFFMAN DALY & LINDGREN LTD.**
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55437
Tel. (952) 896-8300

14 August 2017

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Nos. 2017-1252, -1253

RICHARD GRAMM V. DEERE & COMPANY

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Patent Owner-Appellant Richard Gramm certify as follows:

1. The full name of every party represented by us is:

   Richard Gramm

2. The names of the real parties in interest represented by us are:

   Richard Gramm and Headsight, Inc.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by use are:

   None.

4. The names of all law firms and the partners or associates that appeared for the parties represented by us at the Board, or are expected to appear in this Court, are:

   John A. Cotter, Thomas J. Oppold, David P. Swenson, and Katherine E. Muller of Larkin Hoffman Daly & Lindgren, Ltd.

Dated: 14 August 2017

/s/ *David P. Swenson*
David P. Swenson

# TABLE OF CONTENTS


TABLE OF CONTENTS ....... ii

TABLE OF AUTHORITIES ....... iv

INTRODUCTION ....... 1

ARGUMENT IN REPLY ....... 3

I. THIS RECORD COMPELS THE CONCLUSION THAT THE BOARD ERRONEOUSLY RELIED ON HINDSIGHT BIAS ....... 4

II. DEERE FAILS TO IDENTIFY SUBSTANTIAL EVIDENCE OF ANY MOTIVATION TO MAKE THE CLAIMED INVENTION. ....... 7

A. The Board's Two-Step Approach to Assembling the Elements Is Inconsistent and Precludes Finding a Motivation to Combine. ....... 8

B. Deere Has Not Identified Substantial Evidence that a POSITA Would Have Been Motivated to Replace the Chmielewski Rigid Arms with the Flexible Cleveland Probe to Achieve Improved Flexibility ....... 10

C. Deere Has Not Identified Substantial Evidence Supporting the Board's Conclusion that the Combination Could Be Calibrated to Incorporate "Completely Flexible" Spring 38. ....... 12

1. Chmielewski's Calibration Is Different and Not Instructive. ....... 14

2. Deere Incorrectly Contends that Proof of Motivation to Combine Satisfies the Requirement of Reasonable Expectation of Success in the Mechanical Arts ....... 16

D. The Board's Conclusion that Modifying Cleveland to Be Unfit for Its Intended Purpose Is Acceptable, and Deere's Support Thereof, Are Based on Legal Error. ....... 18

1. Deere and the Board Incorrectly Assert that Cleveland's Intended Purpose Is Not Relevant to the Obviousness of

Replacing Chmielewski's Sensors with the Cleveland Probe. ....19

2. Deere's Prior Art Combination Requires Modifying Cleveland Significantly, in Multiple Ways, from Its Intended Purpose....20

III. DEERE FAILS TO IDENTIFY SUBSTANTIAL EVIDENCE ESTABLISHING A REASONABLE EXPECTATION OF SUCCESS....23

A. Lucas's Conclusory Opinions Cannot Establish a Reasonable Expectation of Success....24

B. No Evidence in Cleveland Supports the Board's Attempt to Recharacterize It as a Height Sensing Mechanism. ....25

C. Deere's Mischaracterizations of Statements by Gramm and His Expert Are Not Evidence of a Reasonable Expectation of Success. ....27

CONCLUSION....29

# TABLE OF AUTHORITIES

Cases

*Broadcom Corp. v. Emulex Corp.*,
732 F.3d 1325 (Fed. Cir. 2013) .......... 10

*Carl Schenck, A.G. v. Nortron Corp.*,
713 F.2d 782 (Fed. Cir. 1983) .......... 12

*In re Butler*,
1999 WL 164952 (Fed. Cir. 1999) .......... 15

*In re Gordon*,
733 F.2d 900 (Fed. Cir. 1984) .......... 20

*In re Hummer*,
241 F.2d 742 (C.C.P.A. 1957) .......... 19

*In re Kubin*,
561 F.3d 1351 (Fed. Cir. 2009) .......... 18

*In re Rothermel*,
276 F.2d 393 (C.C.P.A. 1960) .......... 8, 10, 20

*In re Sernaker*,
702 F.2d 989 (Fed. Cir. 1983) .......... 8

*In re Sponnable*,
405 F.2d 578 (C.C.P.A. 1969) .......... 12

*In re Urbanski*,
809 F.3d 1237 (Fed. Cir. 2016) .......... 15

*In re Wesslau*,
353 F.2d 238 (C.C.P.A. 1965) .......... 7

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
688 F.3d 1342 (Fed. Cir. 2012) .......... 7

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) .......... 5, 6, 16, 18

*Microsoft Corp. v. Enfish, LLC*,
662 F. App'x. 981 (Fed. Cir. 2016) .....................................................................8

*Millennium Pharms., Inc. v. Sandoz, Inc*.,
862 F.3d. 1356 (Fed. Cir. 2017) ......................................................................12

*Mintz v. Dietz & Watson, Inc*.,
679 F.3d 1372 (Fed. Cir. 2012) ........................................................................5

*Power-One, Inc. v. Artesyn Techs*.,
599 F.3d 1343 (Fed. Cir. 2010) ...............................................................24, 25

*Rothman v. Target Corp*.,
556 F.3d 1310 (Fed. Cir.2009) ........................................................................18

*Securus Techs. v. Global Tel*Link Corp.*,
2017 WL 2992516 (Fed. Cir. 2017) ..........................................................8, 24

*Standard Oil Co. v. Am. Cyanamid*,
774 F.2d 448 (Fed. Cir. 1985) ..........................................................................11

*Tokai Corp. v. Easton Enters*.,
632 F.3d 1358 (Fed. Cir. 2011) ...............................................................17, 18

*W.L. Gore & Assocs. v. Garlock, Inc*.,
721 F.2d 1540 (Fed. Cir. 1983) ........................................................................5

<u>Other Authorities</u>

MPEP §2143.01(V)................................................................................................20

# INTRODUCTION

Deere's brief leaves no doubt that the record lacks the substantial evidence required to uphold the Patent Trial and Appeal Board's Final Written Decisions in the two *Inter Partes* Reviews underlying these appeals. As it has done since its Petitions, Deere struggles to justify scrounging up isolated elements from sundry prior art references, using Gramm's disclosure as a guide. Deere entirely severs these references from their original contexts, selecting portions piecemeal. It then modifies and assembles them into a clumsy contraption, vaguely resembling the header height apparatus of Gramm's U.S. Patent No. 6,202,395. This inoperable imitation is stitched together and animated solely by hindsight, following in the footsteps of and illuminated by Gramm's discoveries, in an attempt to approximate his claimed solution.

In the Board's Decisions, it made a finding that the combination of Chmielewski and Lofquist/DPC meets the limitations of maintaining or determining a header a designated height above the soil as the combine traverses the field. In its brief, Deere glosses over that the Board begins its analysis of the claims with only Chmielewski and Lofquist/DPC for maintaining or determining a designated height, and then in a second step replaces Chmielewski's sensors with Cleveland's probe to meet the "pre-loaded generally linear flexible arm" limitation of claim 1 and the "linear shaft" in claim 27. Deere never argued and the Board

never made a finding that the entire combination of Lofquist/DPC, Chmielewski, ***and*** Cleveland would be capable of maintaining or determining a designated height for a header above the soil.

In addition, the Board incorrectly agreed with Deere that Chmielewski teaches calibration of the substituted flexible Cleveland spring. There is no evidence, let alone substantial evidence, that the flexible spring of the Cleveland probe could be calibrated to maintain a header a designated height above the soil. The only evidence of record is that the flexible Cleveland spring would not operate as a sensor arm for a height control system. Because the flexible spring of the Cleveland probe cannot be calibrated, the combination of Cleveland, Chmielewski, and Lofquist/DPC does not yield the type of predictable result that would motivate a POSITA to replace part of Chmielewski with pieces from Cleveland, and does not provide a reasonable expectation of success.

Deere now acknowledges and the Board found that the Cleveland probe must be rotated $90^{o}$ to be combined with Chmielewski and Lofquist/DPC. But the Board erred in permitting this modification, which destroys Cleveland's intended purpose, and further erred in finding that its intended purpose is not relevant to the obviousness argument concerning its combination with Chmielewski and Lofquist/DPC. In so concluding, Deere and the Board incorrectly ignore the holdings of *Gordon*, *Fritch,* and *Ratti,* to claim that a POSITA would have

combined Chmielewski and Cleveland, even if the combination would have negated Cleveland's purpose. Deere creates new arguments about primary and secondary references to disguise the weakness of the Board's Decisions, and Deere impermissibly relies on Gramm's own thought processes in support of the Board's hindsight analysis.

The necessity of calibration and rotation demonstrates that a POSITA would not have a motivation to combine the references, and would not have a reasonable expectation of success in making the claimed invention. The only method by which a POSITA would select these disparate references to create a semblance of the claimed invention is through hindsight analysis.

## ARGUMENT IN REPLY

Deere's task on appeal was to identify substantial evidence in the record to support the Board's Decisions. Instead, Deere relies primarily on conclusory statements from its expert and legally irrelevant insights from the inventor Gramm. Deere also wrongly suggests in multiple places that the parties are in agreement, or that Gramm waived arguments when Gramm has done no such thing. Deere contends, for example, that "Gramm does not dispute that it would have been obvious to combine Chmielewski's header height control system with the Deere Corn Head." Red Br. at 19. That statement is at best misleading, because ***after*** parts of Chmielewski were combined with Lofquist/DPC in the Board's Decisions,

the Board replaced the rigid sensors that made calibration possible in Chmielewski. At Deere's urging, the Board replaced them with completely flexible springs from Cleveland, without ever revisiting the question of calibration and making specific findings for the purportedly invalidating combination ***as a whole***. In sum, the record does not support a finding of a motivation for a POSITA to select the pieces it found in the prior art and to combine them to make the invention, or that a POSITA could have reasonably expected that the resulting assembly would work successfully as the claimed non-cut crop header height control apparatus.

## I. THIS RECORD COMPELS THE CONCLUSION THAT THE BOARD ERRONEOUSLY RELIED ON HINDSIGHT BIAS.

Gramm's opening brief closed by asserting that the only plausible basis for Deere's contentions and the Board's Decisions that a POSITA would have scavenged the required pieces from disparate references, had any inkling to combine them, and anticipated success in making Gramm's invention from the pieces, lies in the sorcery of hindsight. Bl.Br. at 61-62. Deere used Gramm's patent as a roadmap to go find parts that look like the claimed elements, and then as an assembly guide to fit them together. In its brief, Deere altogether ignores this hindsight argument, burying its only acknowledgement of it in a single footnote. Red Br. at 56 n.23.

The lack of any directly responsive argument from Deere, or any substantial evidence of a reason to choose certain pieces and how to combine them with an

expectation of success, permits just one conclusion: Gramm's "claims were used as a frame, and individual, naked parts of separate prior art references were employed as a mosaic to recreate a facsimile of the claimed invention." *W.L. Gore & Assocs. v. Garlock, Inc.*, 721 F.2d 1540, 1552 (Fed. Cir. 1983). Indeed, Deere failed to show even that the problem itself was known in the art at the time of the invention. The only testimony cited by Deere about any awareness of the problem to be solved came from Gramm himself, which is a hallmark of impermissible hindsight. *See* Red Br. at 4, 26-27; Appx633-635; Appx704-706; Appx1085, 1:17-2:54; Appx3106-3111, Appx3222-3224; *W.L. Gore*, 721 F.2d at 1553 (warning against "that which only the inventor taught [being] used against its teacher"). "Often the inventive contribution lies in defining the problem in a new revelatory way," exactly as Gramm did. *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1377 (Fed. Cir. 2012). Consequently, the "statement of the problem represents a form of prohibited reliance on hindsight." *Id.*

Deere and the Board after receiving Gramm's Responses both repeatedly turned to the well-known quote from *KSR* that, "[a] person of ordinary skill is . . . not an automaton," to blunt the accusation that they were succumbing to this hindsight syndrome. Appx30; Appx43; Appx45; Appx101; Appx114; Appx116; Appx812; Appx817; Appx821; Appx838; Appx844; Appx847; Appx1011, ll.1-2; Appx1014, ll.4-8; Red Br. at 51-52. While *KSR* eschewed "[r]igid preventative

rules," in addition to affirming the skill and creativity of a POSITA, it nevertheless acknowledged the "risk of . . . falling prey to hindsight bias" and urged continued caution when facing "arguments reliant on *ex post* reasoning." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007). Unhelpfully for Deere's position, the underlying facts of *KSR* differ in critical ways from the scenario presently before this Court and do not permit reliance on *KSR* to fill gaps in its proofs.

The Engelgau Patent asserted in *KSR* combined an electric sensor with an adjustable gas pedal in an automobile. *Id.* at 406, 410. Multiple prior art patents disclosed modular sensors that could be attached to a pedal, while others addressed the placement of sensors on adjustable pedals. *See id*. at 408-09. The last piece needed from the prior art for the combination was an adjustable pedal with a fixed pivot point, where the prior art sensor could attach, based on the placement methods known in the art. The Asano Patent provided exactly the pedal that was needed. *See id*. at 413. The one argument against the combination was that Asano claimed that pedal for another purpose. *See id*. at 420-21. The Supreme Court ruled that an artisan with ordinary skill and creativity could put these teachings together "like pieces of a puzzle." *Id*. at 420.

Unlike Deere's assemblage of prior art pieces, however, *KSR* involved no gaps or need for modifications. It also did not feature a POSITA who would need to be omniscient and a magician as required here to calibrate for the Cleveland

probe's flexible spring. In *KSR*, the art provided exactly the right pieces and instructions. As such, *KSR* on its facts does not help Deere with its efforts to justify the modifications and operational gap filling it would foist entirely on its POSITA.

## II. DEERE FAILS TO IDENTIFY SUBSTANTIAL EVIDENCE OF ANY MOTIVATION TO MAKE THE CLAIMED INVENTION.

Gramm's opening brief laid out in detail numerous reasons why the Board's decision and the record do not show that—absent reliance on impermissible hindsight—a POSITA would have found the necessary motivation to combine these isolated portions extracted from the prior art references to make the claimed invention as a whole. Bl.Br. at 23, 28; *In re Wesslau*, 353 F.2d 238, 241 (C.C.P.A. 1965); *see Kinetic Concepts, Inc. v. Smith & Nephew, Inc.* 688 F.3d 1342, 1366-67 (Fed. Cir. 2012). The Board accepted Lucas's conclusory statement that the Cleveland spring's "improved flexibility" provided the motivation to swap Cleveland's probe in place of Chmielewski's rigid sensors. Appx47-48; *see also* Appx33-34; Appx119; *see also* Appx103-105. But that substitution, after having initially combined Chmielewski with Lofquist/DPC, would defeat the purpose and operability of Cleveland, of Chmielewski, and of the combination with Lofquist/DPC. Despite Deere's efforts to defend the Decisions, the record does not contain substantial evidence to support the Board's conclusion.

### A. The Board's Two-Step Approach to Assembling the Elements Is Inconsistent and Precludes Finding a Motivation to Combine.

Reversing an obviousness determination in *Rothermel*, this Court's predecessor stressed that, "[a]fter having selected the elements, there still remain[s] the problem of how to construct and combine them." *In re Rothermel*, 276 F.2d 393, 398 (C.C.P.A. 1960); *see Microsoft Corp. v. Enfish, LLC*, 662 F. App'x. 981, 990 (Fed. Cir. 2016). Despite following Gramm's path to locate semblances of the necessary elements, Deere and the Board did not articulate any way of putting together the prior art pieces in the "specific manner claimed," as precedent demands with respect to obviousness. *In re Sernaker*, 702 F.2d 989, 996 (Fed. Cir. 1983); *see Securus Techs. v. Global Tel*Link Corp.*, ___ F. App'x. ___, 2017 WL 2992516, at *4 (Fed. Cir. July 14, 2017) ("Securus failed to explain how or why the skilled artisan would combine the teachings").

As laid out in is brief, Deere's effort to recreate the claimed invention from the references occurs in two steps, which contradict each other and would produce an inoperable device. First, without specificity, Lofquist/DPC and Chmielewski become one, "combin[ing] Chmielewski's teachings of a header height control system on a combine with Lofquist/DPC's teachings of a non-cut crop header." Appx25-32; Appx96-103; *see* Red Br. at 23. Deere volunteers that, "[b]oth Deere and the Board began their obviousness analysis with the Deere Corn Head and Chmielewski's header height control system—not Cleveland." Red Br. at 31-32.

The Board found "Chmielewski teaches maintaining a header a designated height above the ground." Appx25; Appx51-52; Appx55-56; Appx96; Appx122-123; Appx126-128.

Secondly, both below and on appeal, Deere would then swap certain pieces from Cleveland into the Chmielewski header as combined with Lofquist/DPC. Appx188-190; Appx254-256. The Board understood Deere to propose carving "swing member 20, collarlike hub 22, stub 24, helical spring 38, and bearing member 44" out of Cleveland, and making a "simple substitution" of those parts with "contact sensors 236 [and] 237 of Chmielewski." Appx32-33, Appx103-104. But removing rigid sensors 236 and 237 from Chmielewski undermines the entire basis for the Board's conclusion that the initial combination of Chmielewski plus Lofquist/DPC could "determin[e] the height of the header housing" (claim 27) or "maintain[] the header a designated height above the soil" (claim 1). Appx25-26; Appx96-97; *see also* Appx55-56; Appx126-128. Both Deere and the Board fail to elucidate how this aspect of the combination could continue to work after the substitution with Cleveland and its flexible spring.

Separately, Deere and Lucas had added "hinge bolt 30 and nut 36 disclosed in Cleveland [to] secure the potentiometers 235a and 235b of Chmielewski so that [they] can read the movement of Cleveland's swing member 20." Appx217; Appx283; Appx1344-1345, ¶ 139; Appx1555, ¶ 137. Deere also added swing lever

26, switch link 62, and slot 28. Appx194; Appx196-197; Appx210; Appx259; Appx261-262; Appx275-276. At this point, the only pieces of Chmielewski explicitly employed are the potentiometers.

How is this all assembled? According to Deere, at the Board and on appeal, "[t]his connection is mechanical in nature and would have been accomplished according to known methods to yield the predictable result of sensing the angular deflection of an arm." Appx217-218; Appx283; Appx813; Appx839; *see* Appx215; Appx280; Red. Br. at 28, 43. In his deposition, Lucas would only venture that, "[i]t would be attached in many different ways. People with experience at that time that I identified earlier would be able to do it many different ways; it really is a design choice." Appx2244-2246. Not once has Deere proposed or the Board found any actual way to "construct and combine" the elements from the cited references.

B. Deere Has Not Identified Substantial Evidence that a POSITA Would Have Been Motivated to Replace the Chmielewski Rigid Arms with the Flexible Cleveland Probe to Achieve Improved Flexibility.

It is well-established, before and after *KSR*, that "[a]n invention is not obvious just because all of the elements that comprise the invention were known in the prior art; rather a finding of obviousness at the time of invention requires a plausible rational[e] as to why the prior art references would have worked together." *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1335 (Fed. Cir. 2013) (internal quotation marks omitted); *see Rothermel*, 276 F.3d at 870-71. The Board

adopted Deere's argument that a POSITA would be motivated to combine the references to achieve a height sensor with improved flexibility. Appx46-48; Appx118-119; *see also* Appx33-34; Appx103-105. In defense of the Decisions, Deere repeatedly recites Lucas's opinions that (1) these references are "analogous"; (2) putting them together involves a "simple substitution"; and, (3) "a POSITA would have understood … [the] predictable result" of an arm with improved flexibility. Red Br. at 25-26, 28-29, 42-43. Lucas's opinions, however, and by extension the Board's conclusion, were thoroughly refuted by Gramm.

Deere attempts impermissibly to support the Board's finding from the one source that it is forbidden to rely on in an obviousness analysis, the inventor. *See* Bl.Br. at 61-62; *see also* Appx811 (relying on Gramm's statements to show motivation to combine); Appx837. Deere's brief quotes extensively from Gramm's deposition, where he describes how he perceived the problems with what existed at the time. *See* Red Br. at 26-27. Deere mischaracterizes Gramm's testimony about his own thinking and purposes as an admission of what a POSITA would have known or thought at the time of the invention.

Inventors are assumed to be individuals of extraordinary skill—as are expert witnesses, by definition. *See Standard Oil Co. v. Am. Cyanamid*, 774 F.2d 448, 454 (Fed. Cir. 1985). For this reason, "[t]he inventor's own path itself never leads to a conclusion of obviousness; that is hindsight. What matters is the path that the

person of ordinary skill in the art would have followed, as evidenced by the pertinent prior art." *Millennium Pharms., Inc. v. Sandoz, Inc.*, 862 F.3d. 1356, 1367 (Fed. Cir. 2017). From this Court's *Millennium* decision a month ago, stretching back decades, an unbroken thread of black letter law warns that, "[t]he court must be ever alert not to read obviousness into an invention on the basis of the applicant's own statements." *In re Sponnable*, 405 F.2d 578, 585 (C.C.P.A. 1969); *see Millennium*, 862 F.3d at 1367; *Carl Schenck, A.G. v. Nortron Corp.*, 713 F.2d 782, 785-86 (Fed. Cir. 1983). The infringer in *Millennium* tried this same tactic of relying on a purported concession of the inventor. *See* 862 F.3d at 1367. This Court rejected that approach last month, and it should reject it again here.

C. Deere Has Not Identified Substantial Evidence Supporting the Board's Conclusion that the Combination Could Be Calibrated to Incorporate "Completely Flexible" Spring 38.

Similarly, Deere fails to point to substantial evidence in the record to support the Board's finding that the initial Lofquist/DPC plus Chmielewski prior art combination could be calibrated to account for the inclusion of the Cleveland probe with "completely flexible" spring 38. The Board accepted Deere's assertion that Chmielewski teaches calibration, and further concluded that a POSITA would have been aware of the need for, and would capable of extrapolating the calibration teachings of Chmielewski to account for "the degree of flexibility" of Cleveland's

spring. Appx42; Appx113-114. The support Deere marshalled for its position, however, does not equate to substantial evidence.

Deere argues that Cleveland's spring would not bend too much to detect height because: (1) Cleveland states that the spring is adapted to maintain its straight configuration in the absence of bending forces; (2) Lucas testified it would be rigid enough to accurately measure height; (3) Gramm admitted a sensor arm with a spring would accurately serve as a height sensor; and (4) Gramm's patent discloses and claims a spring. Red Br. at 47-48. Deere seemingly ignores that: (1) the spring only maintains a straight configuration *in the absence of bending forces* which would certainly be applied in use as the probe was dragged behind the combine; (2) Lucas's testimony is conclusory and unsupported by any citation to the prior art or knowledge of a POSITA; (3) Gramm only stated that a properly pre-loaded spring could accurately measure changes, which the Cleveland spring is not; and (4) Gramm claims a linear arm or shaft that must be able to maintain or determine a designated height above the soil, unlike Cleveland's probe with its flexible spring capable of bending easily so it can detect lateral displacement.

Deere's remaining argument is that Chmielewski describes calibration "for dealing with sensor arms in a header height control system in great detail." Red Br. at 48. Deere's lone mention of calibration before the Board, found in its Replies, relies exclusively on columns 9 and 39 of Chmielewski, which Gramm's opening

brief discussed in detail. Appx820; Appx846; *see* Appx805-807; Appx831-833; Bl.Br. at 42-46. At oral argument, Deere's counsel dismissed calibration in one sentence, also citing only those same two columns of the reference. *See* Appx1018, ll.22-24. The Board devoted a single page to calibration, where it solely cites column 9 of Chmielewski. Appx42; Appx113-114.

1. <u>Chmielewski's Calibration Is Different and Not Instructive.</u>

As Gramm's counsel stressed at the argument, however, "if you look at the calibration in the spec[ification of Chmielewski], that talks about a different type of calibration." Appx1047, ll.23-24. Chmielewski establishes the minimum and maximum working heights of its sensors once each the day, with the vehicle stopped, to record an operating range for the header. The "[r]outine calibration" taught there involves determining the minimum and maximum working heights of the header based on minimum and maximum voltage outputs from the sensors. Appx1894, 40:30-60. It does not teach anything about calibrating for a bending spring or any amount of flexibility. Gramm's counsel elaborated that the size, downward force, and "springy" nature of spring 38 render it insurmountably inaccurate, as Matousek explained also. Appx1047-1048. Cleveland itself cautions that, "[t]his downward force, however, should not be so great that bearing member 44 plows into the soil and makes a furrow of its own." Appx1906, 4:24-26. Thus, the Cleveland spring must be so flexible that it will bend easily to stay on top of

the soil. In response, no evidence that Deere or the Board points to offers any indication whatsoever of how a POSITA would calibrate Deere's prior art combination for not only the longer, extensible spring 38, but further for how to account for the variables as the spring extends and moves during operation, dragging heavy bearing member 44 behind it through a cornfield.

In addition, as the slope of the ground changes, Cleveland teaches bearing member 44 has a "tendency … to roll downwardly whenever it is on a slanted surface." Appx1906, 4:27-33. Indeed, it teaches that, "bearing member 44 would always roll when on a slanted surface." *Id.* Due to the spring's "complete flexibility" in any direction, and the downward force on the spring of the drag behind the vehicle, to use spring 38 in an invalidating combination a POSITA would have to account and calibrate for each movement as the spring bends and stretches in use. As the terrain changes, it would also cause bearing member 44 to roll with the changing slope. As Matousek testified, the very nature of Cleveland's spring would render the result inoperable and thus teaches away from modifying a piece of the probe for combination with Chmielewski, as Deere suggests, and the Board found. *See* Appx2859-2861, ¶¶ 82-83; Appx2910-2911, ¶¶ 82-83; Bl.Br. at 25-26, 40-42; *see In re Urbanski*, 809 F.3d 1237, 1243 (Fed. Cir. 2016); *In re Butler*, 194 F.3d 1332, 1999 WL 164952, at *2-3 (Fed. Cir. 1999) (unpublished).

The POSITA here is "a mechanical engineer having familiarity with agricultural equipment such as combines, and hydraulic systems and sensors or a person having 10 or more years of experience working with combines." Appx11-12 (internal quotation marks omitted); Appx82. Deere never argued, and there is no evidence to suggest, that such a person could conceivably craft an algorithm to perform the calculations necessary to account for all of these variables simultaneously during operation. Indeed, it is likely impossible to devise such computations, and Deere has not offered any evidence that this could be done. The admonition of *KSR* cuts both ways—a POSITA is not an automaton, yet that person always must remain just ***ordinary***, in contrast to an omniscient magician and mathematician. *See KSR*, 550 U.S. at 420-21. Chmielewski's description of calibrating its rigid sensors when the vehicle is stopped teaches away from any solution to the need to calibrate for the Cleveland spring, on a moving vehicle, while harvesting corn.

2. <u>Deere Incorrectly Contends that Proof of Motivation to Combine Satisfies the Requirement of Reasonable Expectation of Success in the Mechanical Arts.</u>

While Deere has not shown any motivation to combine its three references, it incorrectly argues that motivation to combine in the predictable arts satisfies the *KSR* requirements for reasonable expectation of success. Twice in its brief Deere tries to sweep away the caselaw Gramm has cited as inapposite for arising "in the

biochemical context," Red Br. at 29 n.9, or later for "address[ing] a reasonable expectation of success in the chemical/biological composition context," *id*. at 44. Deere never actually distinguishes this precedent, aside from highlighting the underlying field of art. Section 103, of course, does not differentiate between technologies. At the same time, ironically, Deere emphasizes the "simple mechanical combination of Chmielewski and Cleveland," *id*. at 29 (Deere refers to this as a "simple substitution" or "simple mechanical combination" a half-dozen other times in its brief, *see id*. at 3, 21, 25-26, 28), while ignoring the ***unpredictable*** complexities discussed above and described in detail by Matousek, with trying to calibrate an extensible "springy" spring.

Deere would rely instead on this Court's *Tokai* decision, from which it quotes artfully. No caselaw cited by Deere, however, establishes that mechanical arts are per se facile and judged differently. The technology in *Tokai* was a safety button on a utility lighter with an extended lighting rod where the lock must be pressed, while the user pulls the trigger, for the lighter to ignite. *Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1361-62 (Fed. Cir. 2011). A POSITA was found to be, in part, "an individual showing aptitude in high school shop class." *Id*. at 1369. After noting that the simplicity of this art did not in itself render the claims obvious, the Court observed that finding motivation to combine evidence "in the nature of the problem to be solved . . . is particularly relevant with simpler

mechanical technologies." *Id.* at 1371; *Rothman v. Target Corp*., 556 F.3d 1310, 1319 (Fed. Cir.2009) (citing *KSR*, 550 U.S. at 418) (agreeing that in a "very predictable field" it may be easier to show motivation to combine). Of course this could also be said of a simpler chemical combination—the same general law of obviousness applies to all arts. Indeed, this Court has expressly "decline[d] to cabin KSR to the 'predictable arts.'" *In re Kubin*, 561 F.3d 1351, 1360-61 (Fed. Cir. 2009). No matter how often Deere and the Board incant "simple" and "predictable," that mantra is not evidence that a POSITA would know how to calibrate Deere's prior art combination utilizing a completely flexible spring dragging a heavy bearing through a cornfield.

### D. The Board's Conclusion that Modifying Cleveland to Be Unfit for Its Intended Purpose Is Acceptable, and Deere's Support Thereof, Are Based on Legal Error.

The true purpose of Cleveland, detecting lateral displacement, is contravened if the probe is rotated $90^{\circ}$. The Board erred both in recasting Cleveland's purpose as including detecting changes in elevation, and in concluding that Cleveland's purpose is not relevant.[1]

---

[1] Gramm relies on his opening brief with respect to other arguments raised by Deere concerning the rotation of the Cleveland probe.

### 1. Deere and the Board Incorrectly Assert that Cleveland's Intended Purpose Is Not Relevant to the Obviousness of Replacing Chmielewski's Sensors with the Cleveland Probe.

Under *Gordon*, *Fritch*, and *Ratti*, it is improper to modify a reference in a manner that makes it unfit for its intended purpose. *See* Bl.Br. at 25-26, 35-39. To counter this precedent, Deere for the first time in its brief argues, and gets the law wrong, that the outcome of this analysis depends on the characterization of the references as primary or secondary. Then Deere quibbles over which of the references it seeks to combine to piece together Gramm's claimed invention is the "***primary*** reference," and whether it matters. *See* Red Br. at 33 (Deere's emphasis). According to the Board and Deere, while trying to combine elements of references, modifying any but the primary reference in a way that renders it unfit for its intended purpose is permissible, so long as the primary reference remains able to operate as intended for its own purpose. *See id.*; Appx41 n.20; Appx112 n.19. Unfortunately for Deere, neither the Board nor Deere cites a single case affirmatively making anything resembling this point. *See id*.

To the contrary, as early as 1957, this Court's predecessor criticized the Board for "propos[ing] to modify the secondary reference before it is employed to modify the primary reference." *In re Hummer*, 241 F.2d 742, 745 (C.C.P.A. 1957). *Hummer* counsels directly against the approach the Board followed here, and the position Deere maintains on appeal, swapping a modified portion of Cleveland into

the combination of Chmielewski and Lofquist/DPC. *See Rothermel*, 276 F.2d at 395-97 (reversing obviousness rejection that involved modifying both the primary and secondary references); *see also* MPEP §2143.01(V) ("If [the] proposed modification would render the prior art *invention being modified* unsatisfactory for *its* intended purpose, then there is no suggestion or motivation to make the proposed modification." (emphasis added) (citing *In re Gordon*, 733 F.2d 900 (Fed. Cir. 1984)). Despite arguing in its brief that "the Board here did not rely on Cleveland as a primary reference," Deere coyly refrains from taking a position as to whether any of the references it relies on is "primary." Red Br. at 33. The Board does not label any reference primary or secondary.

The Board's assertion, which Deere echoes in its brief, that even if Cleveland was rendered unfit for its intended purpose a POSITA would still combine the references is contrary to the law Gramm cited below and in his opening brief. *Gordon* and its progeny state that if a modification would render a reference unfit for its intended purpose, there simply is no motivation to make that modification. Bl.Br. at 35-36.

2. Deere's Prior Art Combination Requires Modifying Cleveland Significantly, in Multiple Ways, from Its Intended Purpose.

At the oral argument, Deere counsel admitted that, "[i]n Cleveland the arm is detecting lateral motion. * * * The arm is moving from the left to right direction in Cleveland because it's measuring the position of the agricultural machine

relative to a trough. That's the way it—that's the type of motion it's detecting." Appx1011, ll.1-10. By the time it submitted its Replies to the Board, it had dawned on Deere that it needed to rotate the pieces including plate 18 from Cleveland 90°, and to replace or alter fixed bolt 30 to rotate, for it theoretically to actuate Chmielewski's potentiometers. Appx812-813; Appx820-821; Appx838-839; Appx847-848. This amalgam of parts would also have to somehow attach to and fit under the Lofquist/DPC divider, as combined with Chmielewski. After shrinking and rotating the Cleveland probe rearward, it would no longer detect lateral motion.

Deere's brief labels size, robustness, and accurate height detection as irrelevant "unclaimed properties." Red Br. at 46-47, 51. As an initial matter, the Board did not rule that there were no size or robustness requirements, and did not classify accurate height detection as an "unclaimed property." Rather, the Board said the claims did not set an "explicit" size requirement, then concluded that a POSITA could modify the size of the pieces from Cleveland enough to fit. Appx30; Appx32; Appx45; Appx101; Appx103; Appx116. Indisputably, irrespective of the degree, the Board recognized that Cleveland's plate, spring, and linkages had to be modified, including size. *Id.* In any event, what destroys any possible motivation to combine here is not an explicit size limitation in the claims, it is the relative sizes of the prior art elements as they relate to each other when

assessing the desirability of combining them. The size and the limited area at the tip of the Lofquist/DPC divider and the way in which a non-cut crop header operates are fixed—the DPC depicts a commercial product sold by Deere, not an abstract teaching to be modified freely. Appx1740, Appx1748, Appx1754-1759.

More importantly, the Board and Deere only respond to how the parts from Cleveland are resized, rotated, altered and substituted into whatever parts of Chmielewski were first merged with Lofquist/DPC by dissembling that "[o]ne of ordinary skill in the art is not an automaton." Deere's Brief at 51-52; *see,* Appx30, Appx43; Appx45; Appx101; Appx114; Appx116; Appx812; Appx817, Appx821; Appx838; Appx844; Appx847. For his part, when Gramm's counsel asked Lucas about how to add the Cleveland probe including the plate, and whether he could draw an example, he again demurred, testifying that, "I am not very good at drawing, I never was a draftsman, and there are so many different ways you could do it I would hate to isolate one." Appx2264-2267.

The bottom line is that Lucas, Deere, and the Board never attempt to describe any concrete way of combining these various pieces for placement at the tip of the Lofquist/DPC dividers. For its part, the Board avoided the issue altogether by relying on *KSR* for the non-sequitur that there need not be a finite number of solutions yielding predictable results in order to find obviousness. Appx27-28; Appx37-38; Appx98-100; Appx108-109. That may be true, but Deere

bore the burden of offering ***at least one way*** in which the pieces of these references could conceivably be combined to start assembling the claimed invention.

## III. DEERE FAILS TO IDENTIFY SUBSTANTIAL EVIDENCE ESTABLISHING A REASONABLE EXPECTATION OF SUCCESS.

Just as Deere fails to substantiate any motivation to combine, it cannot point to substantial evidence in the Decisions or the record that the allegedly invalidating prior art configuration could reasonably be expected to determine or maintain the height of a header, or that one of ordinary skill in the art could calibrate it to rely on Cleveland's spring 38 successfully. Because the Board did not make a finding that a POSITA would have a reasonable expectation of success in using the references to arrive at the claimed invention, Deere attempts to argue that the Board implicitly made such a finding by concluding that combining the references would yield a predictable result. Red Br. at 41-45. But the Board is not making a finding that the combination would predictably result in the *claimed invention* in the instance cited by Deere, nor is Lucas so stating. *See* Appx48; Appx119; Appx1343-1344, ¶ 138; Appx1554-1555, ¶ 136. Thus, the cited findings do not support Deere's position. Deere's other citations to the record are no more helpful.

Deere has argued, as it must, that its combination would accurately detect height. *See*Appx1344, ¶ 138, Appx1555, ¶ 136. The Board agreed that at least the initial combination of Lofquist/DPC and Chmielewski would maintain or determine "a header a designated height above the ground." Appx26; Appx97. On

appeal, Deere relies on three sources to support its argument that a POSITA would have a reasonable expectation of success in combining the selected parts to create a working height sensor for a non-cut crop header. Deere cites Lucas's opinion, Cleveland, and a supposed admission from Gramm's expert Robert Matousek. *See* Red Br. at 46-48. The paragraphs Deere relies on from Lucas's declarations contain only the following conclusory sentence about "height," quoted multiple times in Deere's brief, that the Cleveland probe merged into Chmielewski, "would still have been sufficiently rigid so as to allow for the accurate measurement of height." Red Br. at 25, 28, 47; Appx1344, ¶ 138; Appx1555, ¶ 136; *see Securus*, 2017 WL 2992516, at *4; *Power-One, Inc. v. Artesyn Techs*., 599 F.3d 1343, 1352 (Fed. Cir. 2010) (finding expert's "testimony did not provide a plausible rational[e] as to why the prior art references would have worked together to render the claims . . . obvious").

A. Lucas's Conclusory Opinions Cannot Establish a Reasonable Expectation of Success.

Deere argues that Gramm had "never characterized" Lucas's opinion on this point as "conclusory," and thus waived this issue. *See* Red Br. at 30. Deere is flat out wrong. Gramm has characterized Deere's analysis as "conclusory," including Lucas's contributions, since its Preliminary Response. *See* Appx324; Appx347-351; Appx353 (using "conclusory" eleven times); Appx378; Appx401-405; Appx407; *see also* Bl.Br. at 24, 40-41, 50, 52-53. Gramm continued to attack

Lucas's superficial analysis throughout the proceedings below as not plausible. *See Power-One*, 599 F.3d at 1352. Deere's game of semantics is out of place in appellate advocacy. Not only is Lucas's analysis conclusory and implausible, the sole underlying citation to Cleveland that Deere repeats in its brief says absolutely nothing about height. Red Br. at 27, 36; *see* Appx1906, 4:39-54.

B. No Evidence in Cleveland Supports the Board's Attempt to Recharacterize It as a Height Sensing Mechanism.

Deere labors mightily in its brief to obscure and broaden the meaning of "relative" to refer to or include height. Deere argues that, "the overall purpose of Cleveland and the prior art combinations are the same: detection of where agricultural equipment is relative to the ground." Red Br. at 34. Deere then offers multiple out-of-context quotes referring to Cleveland detecting "relative motion," a "relative position," or positional changes "relative to the ground." *Id.* at 35-36. In an impressive sleight-of-hand, Deere concludes by first quoting a footnote in the Decisions, and then an unrelated statement from Gramm's expert, to turn "relative to" into detecting "elevation changes" or "height." *Id.*; *see* Appx41 n.20; Appx112 n.19; Appx2835, ¶¶ 42-43, Appx2885, ¶¶ 42-43.

Deere, and the Board before it, achieves this sleight-of-hand by playing on the term "plane." The Board in a footnote states, with no record citation, that the purpose of Cleveland's probe is "to detect relative motion in the plane in which it operates"—to be clear, that is not quoted from Cleveland. Appx41 n.20; Appx112

n.19. In the next sentence, the Board makes the key swap in terminology that Deere embraces: "In other words, the purpose of the probe assembly is ***to detect elevation changes*** (i.e., from the deepest portion of the furrow (*see* Ex. 1007, 4:39-54))." *Id.* The Board repeats later that in the combination the Cleveland "sensor arm/probe ***still*** detects elevation changes." *Id.*; Appx46-47 (emphasis added); Appx117-118 (same). But the footnote cites to a portion of the Cleveland specification that refers neither to a "plane" nor to any "elevation changes." *See* Appx1906, 4:39-54. Worse yet, the Board's parenthetical suggests that the change in elevation measured by the probe is the ***depth of the furrow***. This is nonsensical, and something Deere never raised in the proceedings. The ***depth*** of a furrow is irrelevant to the Cleveland apparatus. The only role of the furrow is to retain the bearing member in it, in order to pull side-to-side on spring 38, and consequently swing member 20, if the vehicle steers away from the furrow.

Even if the Board, and now Deere, mean that the plane in which Cleveland operates can be modified, that cannot justify the substitution in the Board's footnote of "elevation" for "position … with respect to a furrow." To the extent the patent refers to "plane," it solely discusses a vertical plane in which the spring moves side-to-side—*i.e.*, being pulled laterally in that plane—if the vehicle strays from alignment with the furrow. Appx1907, 5:17-35.

In Cleveland, "vertically disposed" and "vertical position" in this passage do not refer to height. As part of its incorrect assertion that Cleveland somehow detects elevation changes, Deere quotes part of one Board judge's question at the hearing about what happens with the sensor, "once it comes out of the trough and up the side." Red Br. at 36 (citing Appx1042, 44:15). In the portions of the Decisions that Deere relies on, the Board merely reiterates its own assertion that "detect[ing] relative motion in the plane in which it operates" becomes "detect[ing] elevation changes." Appx41 n.20, Appx46-47; Appx112 n.19; Appx117-118. By this it means "from the deepest portion of the furrow"—all based on this same passage from Cleveland, which says nothing at all about "height" or "elevation." *See id.*

C. <u>Deere's Mischaracterizations of Statements by Gramm and His Expert Are Not Evidence of a Reasonable Expectation of Success.</u>

Deere culminates its efforts to rally substantial evidence that its combination "would achieve height detection," and to attribute "detect[ing] elevation changes" to the Cleveland arm, by taking a few words of Matousek's declaration out of context. Deere's brief quotes Gramm's expert as referencing the "the height sensing arm of Cleveland," as proof it senses height. Red Br. at 36. To the contrary, the cited paragraph comes from Matousek's introductory summary of his rebuttal of Lucas on this point, and includes the word "height" only in setting up Lucas's statements concerning use of the Cleveland arm as a height sensor to

debunk them. Actually, Matousek's paragraph 42 in full states, "[a]s explained in detail in Paragraphs 77-84 below, the height sensing arm of Cleveland ***is incapable of functioning as a vertical height detector*** as opposed to a lateral position detector." Appx2835, ¶ 42; Appx2885, ¶ 42. Paragraph 43 introduces paragraphs 86-89 of Matousek's Declaration and concludes that even with "significant modification and trial and error, [it] would still not result in a device capable of carrying out the functions of the invention of the '395 patent." Appx2835, ¶ 43; Appx2853-2865, ¶¶ 76-89; Appx2885, ¶ 43; Appx2903-2915, ¶¶ 76-89. Matousek's declaration instead provides compelling proof that a POSITA would not perceive a reasonable expectation of success in combining Cleveland with Lofquist/DPC and Chmielewski to provide a functional height sensor for maintaining a header a designated height above the soil.

Deere's brief also presents a misleading quote from the inventor as proof "that the prior art combination would work for a period of time." Red Br. at 55. Gramm was asked about paragraph 7 (Deere's counsel presumably meant paragraph 70) of his declarations, which stated the mechanism of Cleveland "with its multiple linkages 26, 62, and slots 28 would quickly bend from exposure to the violent harvesting environment." Appx2792, ¶ 70; Appx2816, ¶ 70. At his deposition, Gramm was asked how long it would take debris to clog the linkages,

and he answered, "[p]erhaps a day, perhaps a week." Appx3131, ll.12-24. On redirect, Gramm clarified his answer as follows:

> So I believe I said day, weeks, a little period of time, but I was being at the most optimistic side of possibilities of that working. In reality, it could be seconds or minutes. The first corn stalk at the wrong angle, the first debris at the wrong angle, and it's over.

Appx3215, ll.1-19. Gramm's testimony about debris clogging the linkages in Cleveland was not an admission that the combined prior art mechanism as a whole would work for any period of time for maintaining a header a designated height above the soil.

In short, none of Deere's record citations rise to the level of substantial evidence that Deere's proposed combination of prior art pieces would result in a reasonable expectation of success, by a POSITA, in making the claimed invention.

## CONCLUSION

Deere cannot identify substantial evidence that anything beyond hindsight bias enabled it to locate the pieces it selected and to cobble together a facsimile of the claimed invention, not to mention even to recognize the problem that Mr. Gramm alone perceived and solved. Above all, Deere cannot demonstrate a reasonable expectation of success that its recreation would work as a height sensor, or could be calibrated to rely on a completely flexible spring as the rotationally displaceable arm or shaft. Accordingly, and for the reasons set forth in Gramm's

opening brief, this Court should reverse the Board's invalidation of claims 1-11 and 27-34.

Dated: 14 August 2017

Respectfully Submitted,

/s/ *John A. Cotter*
John A. Cotter
Thomas J. Oppold
David P. Swenson
Katherine E. Muller
**Larkin Hoffman Daly & Lindgren Ltd.**
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437-1060
(952) 835-3800
Email: jcotter@larkinhoffman.com
toppold@larkinhoffman.com
dswenson@larkinhoffman.com
kmuller@larkinhoffman.com

*Attorneys for Appellant Richard Gramm*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 6,970 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 pt. Times New Roman font.

/s/ *David P. Swenson*
David P. Swenson

Attorney for Appellant Richard Gramm

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing APPELLANT RICHARD GRAMM'S REPLY BRIEF with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system this 14th day of August, 2017, and served a copy on counsel of record by the CM/ECF to counsel for Petitioner-Appellee Deere on the service list below.

Gary M. Ropski
Joshua H. James
Jeffry M. Nichols
Laura A. Lydigsen
Jafon L. Fearson
**BRINKS GILSON & LIONE**
NBC Tower – Suite 3600
455 N. Cityfront Plaza Dr.
Chicago, Illinois 60611-5599
Tel.: 312.321.4200
Fax: 312.321.4299
Email: gropski@brinksgilson.com
jnichols@brinksgilson.com
jjames@brinksgilson.com
llydigsen@brinksgilson.com
jfearson@brinksgilson.com

/s/ *David P. Swenson*
David P. Swenson

***Attorney for Appellant***
***Richard Gramm***